**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 15 2004**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DR. CYNTHIA ANNETT, Ph.D.,

    Plaintiff-Appellant,

v.

UNIVERSITY OF KANSAS,

    Defendant-Appellee.

No. 03-3069

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 01-2367-JAR)**

---

Alan V. Johnson, (Stephen D. Lanterman with him on the brief), Sloan, Listrom, Eisenbarth, Sloan & Glassman, LLC, Topeka Kansas for the Plaintiff-Appellant.

Sara L. Trower of Lawrence, Kansas, for the Defendant-Appellee.

---

Before **SEYMOUR**, **BALDOCK** and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

    Dr. Cynthia Annett filed suit against the University of Kansas under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3, alleging that the University had unlawfully retaliated against her for exercising her rights under Title VII. The

district court granted summary judgment to the University. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **AFFIRM**.

**I**

In August 1992, Annett began her employment as a tenure-track assistant professor at the University of Kansas ("University"). She was denied tenure in March 1998, and her employment was terminated at the end of the 1998–1999 school year. Annett filed suit in federal court in February 1999, alleging that her termination was the result of discrimination and retaliation. On March 3, 2000, a jury found in favor of the University; post-trial motions continued into June 2000.

In July 1999, Dr. Maria Carlson, Director of the Center for Russian and East European Studies, requested that Provost David Shulenburger appoint Annett to the position of adjunct assistant professor to allow Annett to continue her work on a USAID-funded University grant. Shulenburger appointed Annett to an adjunct lecturer position rather than an adjunct assistant professor position for a one-year term beginning July 1, 1999. He reappointed Annett as an adjunct lecturer for the period between August 18, 2000 and August 17, 2001.

Annett alleges that in the spring of 1999, she applied for principal investigator ("PI") status through Carlson. PI status permits an individual to act as the director on grant applications sponsored by the University. According to University regulations, regular faculty are entitled to automatic PI or Co-PI status, whereas

adjunct faculty must apply for "special" or "project" PI status through a University sponsor. Annett claims that Carlson informed her that she was not eligible for PI status at the University, yet failed to inform her that she was eligible for special or project PI status.

On April 14, 2000, Annett applied for the position of assistant director at the University's Equal Opportunity Office ("EOO"), a position which included facilitating recruitment and hiring for faculty and unclassified staff. The search committee decided not to interview Annett for the position; Annett was notified of this decision in a letter dated May 11, 2000. She also received a letter dated June 12, 2000, stating that another candidate had been selected.

During April and May 2000, Annett and a colleague repeatedly visited the EOO office to research a report they were writing on the status of women and minorities at the University. Annett reviewed a copy of a conciliation agreement between the University and the Office of the Federal Contract Compliance Program ("OFCCP")—the federal agency which oversees affirmative action programs for federal contractors pursuant to Executive Order 11246. The conciliation agreement required the University to: (1) annually compile a report of the results of its affirmative action program; (2) revise its procedures to include the gender of minorities in its employment application, hiring, and promotion data; and (3) address the underutilization of minorities and females and identify corrective action. After

reviewing data documenting the University's compliance, on April 24, 2000, Annett and her colleague commented to the EOO director and associate director that they believed the University was not in compliance with the agreement.

On September 6, 2000, Annett filed an administrative charge with the Equal Employment Opportunity Commission ("EEOC"), claiming that the University failed to hire her as assistant director of the EOO and failed to grant her PI status in retaliation for engaging in Title VII protected activity. Annett filed suit in federal district court and in separate orders the court granted summary judgment to the University on Annett's retaliation claims and denied Annett's motion to reconsider its judgment. Annett appeals.

## II

We review a grant of summary judgment de novo. Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1216 (10th Cir. 2002). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999). However, "[u]nsupported conclusory allegations . . . do not create a genuine issue of fact." L&M Enterprises, Inc. v. BEI Sensors & Systems Co., 231 F.3d 1284, 1287 (10th Cir. 2000).

Title VII makes it unlawful to retaliate against an employee because she has "opposed" any practice made unlawful by Title VII, or because she has "participated . . . in an investigation, proceeding or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Annett alleges that in retaliation for exercising her rights under Title VII, the University denied her (1) an assistant director EOO position, (2) the title of adjunct professor, and (3) PI status.

Where, as here, there is no direct evidence of retaliation, we analyze a retaliation claim under the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Jeffries v. State of Kansas, 147 F.3d 1220, 1231 (10th Cir. 1998) (applying the McDonnell-Douglas framework to a claim of retaliation). To that end, Annett must first present a prima facie case of retaliation, which then shifts the burden to the University to produce a legitimate, nondiscriminatory justification for taking the disputed employment action. EEOC v. Flasher Co., Inc., 986 F.2d 1312, 1316 (10th Cir. 1992). If the University satisfies this standard, the burden shifts back to Annett to provide evidence showing that the University's proffered reasons are a pretext for discrimination. Id.

**A**

To state a prima facie case of retaliation, Annett must show that: (1) she engaged in protected activity; (2) the University took an adverse employment

- 5 -

action against her; and (3) there exists a causal connection between the protected activity and the adverse action.  See Jeffries, 147 F.3d at 1231.  It is undisputed that Annett's 1999 lawsuit against the University is a protected activity.  On appeal, Annett argues that her statement to the EOO director regarding the University's compliance with the conciliation agreement also constitutes a protected activity.  In her affidavit, Annett states that she complained that the University failed to:  (1) compile annual reports of its affirmative action plan; (2) maintain adequate records concerning gender and minority status in application flow data; and (3) take action to correct underutilization of minority and female employees.  We will assume, without deciding, that with respect to her complaint concerning underutilization of minorities and women, Annett has met her burden of establishing a protected activity for the purposes of stating a prima facie case.[1]

We thus turn to the second prong that Annett must establish—that she suffered an adverse employment action.  An adverse employment action constitutes "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998); see Sanchez v. Denver Pub. Schs.,164 F.3d

---

[1]  As a result, we need not address whether general grievances regarding the proper record-keeping of affirmative action programs constitute engaging in protected Title VII activities.

527, 532 (10th Cir. 1998) (citing Burlington to define adverse employment action). The University does not contest that its decision not to hire Annett for the assistant director EOO position constitutes an adverse action. Rather, it challenges Annett's arguments on appeal that (1) the University's decision to grant Annett the title of adjunct lecturer versus adjunct professor, and (2) Carlson's alleged failure to inform Annett of her eligibility to apply for special or project PI status similarly represent a significant change in employment status.

We decline to consider Annett's claim that receiving an adjunct lecturer versus an adjunct professor position constitutes an adverse employment action as she has failed to exhaust her administrative remedies. We have reviewed her charge of discrimination filed on September 6, 2000 and her "complaint narrative" submitted to the OFCCP on May 31, 2000 and find no reference to the distinction between "lecturer" and "professor" as probative of discrimination or retaliation. Her complaint merely states: "I was given an Adjunct faculty position, but no Principal Investigator status, which prevents me from obtaining grants." (Appellee's App. at 198).[2]

---

[2] We note that Annett's complaint narrative states: "My own position as an Adjunct Faculty member at KU was downgraded to prevent me from submitting grants that could act as an alternative source of income." (Appellee's App. at 201.) However, we cannot conclude that this sentence represents the distinction between being appointed an adjunct lecturer versus an adjunct professor in 1999 or 2000.

We lack jurisdiction to review Title VII claims that are not part of a timely-filed EEOC charge. Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 799 (10th Cir. 1997). Previously, we would proceed to examine whether the alleged employment action, provided it occurred after the filing of the EEOC charge, was "like or reasonably related to the allegations of the EEOC charge." Ingels v. Thiokol Corp., 42 F.3d 616, 625 (10th Cir. 1994). However, our recent holding in Martinez v. Potter, 347 F.3d 1208 (10th Cir. 2003), has foreclosed this line of inquiry. In Martinez, we abrogated the continuing violation exception to our jurisdictional requirements to allege a claim of retaliation and held that "unexhausted claims involving discrete employment actions are no longer viable." Id. at 1210. In so doing, we relied on National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), which concluded that each discrete retaliatory action constitutes its own "unlawful employment practice for which administrative remedies must be exhausted," Martinez, 347 F.3d at 1210 (quotation omitted), and we applied Morgan to incidents occurring after an employee's filing of an EEO complaint. Pursuant to our holding in Martinez, we dismiss this claim for failure to exhaust administrative remedies.

Turning to Annett's claim of adverse employment relating to her ability to obtain PI status, Annett argues that Carlson "effectively blocked" her from naming herself PI on grant applications. (Appellant's Br. at 36.) Annett alleges

- 8 -

that in the spring of 1999, she applied for PI status through Carlson, and that

Carlson informed her that she was not eligible for PI status at the University.[3]

Annett argues that in reliance on Carlson's representations, she declined to submit

four grant applications naming herself PI or Co-PI, which, according to

deposition testimony before the district court, is a prestigious designation that

may have increased Annett's likelihood of winning grants and receiving funding

in the form of a salary for Annett.

We "liberally define[] the phrase adverse employment action" and do not

limit such actions to "monetary losses in the form of wages or benefits."

Sanchez, 164 F.3d at 532 (quotation omitted). In so defining the phrase, we

consider acts that carry "a significant risk of humiliation, damage to reputation,

and a concomitant harm to future employment prospects." Berry v. Stevinson

Chevrolet, 74 F.3d 980, 986 (10th Cir. 1996). Therefore, an action that

significantly harms a plaintiff's future employment prospects may be considered

an adverse action. See Berry, 74 F.3d at 986 (holding that the filing of false

criminal charges constituted an adverse employment action because of its

potential to harm future employment prospects); but see Aquilino v. Univ. of

Kan., 268 F.3d 930, 936 (10th Cir. 2001) (rejecting plaintiff's claim that denial of

---

[3] Carlson testified that Annett "informally requested that I inquire as to her eligibility for PI status." (Appellant's App. at 63.)

an appointment as a research associate constituted an adverse action when the alleged harm to her future employment prospects was speculative and rested solely in her untested belief in an alterative career path as a private scholar). However, "a mere inconvenience or an alteration of job responsibilities," will not suffice. Sanchez, 164 F.3d at 532 (quotation omitted).

Annett's argument that she was blocked from receiving PI status and therefore suffered harm to future employment prospects is not without force. However, the evidence in the record does not support the allegation. Annett simply alleges that despite the University's regulations stating that adjunct faculty could apply for special or project PI status, Carlson failed to inform her of her eligibility to apply for PI status within the University, and, as a result, Annett maintains she did not include herself as PI or Co-PI on specific grants. Annett also alleges that Carlson advised her to submit a MacArthur grant application as an independent scholar. To that end, Annett presents evidence of a February 2000 e-mail correspondence from Carlson to Shulenburger stating: "I have not requested Project PI status [for Annett in regard to her application for a MacArthur grant] and would not do so without agreement all around." (Appellant's App. at 136.)

Construing this evidence in the light most favorable to Annett, and thus inferring that Carlson (1) failed to request PI status for Annett on the MacArthur

grant, and (2) failed to affirmatively inform Annett of written University regulations which would allow Annett to apply for PI status on other grants, we find ourselves in agreement with the district court that the resulting burden on Annett to investigate the University regulations on her own is no more than a mere inconvenience that did not significantly impact Annett's future employment prospects. Similarly, the presumed failure of Carlson to request PI status on one grant does not constitute a harm to future employment prospects that carries a "significant risk of humiliation [or] damage to reputation," Berry, 74 F.3d at 986, tantamount to a false accusation of criminal charges or a negative letter of reference. Because we conclude that Annett's claims regarding her ability to obtain PI status do not constitute an adverse action, we are left with the University's decision not to hire Annett for the assistant director EOO position as the only adverse action before us.

To establish the third element of her prima facie case, Annett must show a causal connection between the protected activity and the University's decision not to hire her. She may establish the causal connection by proffering "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1320 (10th Cir. 1999). Again, we agree with the district court. Temporal proximity between Annett's previous lawsuit, resulting in a

verdict rendered in March 2000 with post-trial motions continuing into June 2000, and the University's decision not to interview and hire Annett in May 2000 and June 2000 respectively, suffice to demonstrate causation for the purpose of establishing a prima facie case. See Ramirez v. Oklahoma Dep't. of Mental Health, 41 F.3d 584, 596 (10th Cir. 1994) (concluding that a one and one-half month period between protected activity and adverse action may establish causation); see also Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999) (assuming that temporal proximity of two months and one week is sufficient to support a prima facie case of retaliation). Thus, Annett has established a prima facie case of retaliation with respect to the University's decision not to hire her for the EOO position.

**B**

Because Annett has established a prima facie case of retaliation, the burden shifts to the University to proffer a nondiscriminatory reason for its decision. The University presented the following nondiscriminatory reasons before the district court: (1) Annett's prior experience was limited to teaching and researching in environmental science and statistics and did not include university administration; (2) Annett had not previously held positions in affirmative action, equal opportunity, human resources, or in university recruitment; (3) all persons chosen for an interview had some administrative experience in recruitment; and (4) the

person chosen for the position had fourteen years of relevant experience in recruitment. Because these reasons are not "facially prohibited by Title VII," Flasher, 986 F.2d at 1317, we agree with the district court that the University has articulated a legitimate, nondiscriminatory reason for declining to hire Annett.

## C

In order to prevail on her retaliation claim, Annett must proceed to show that there is a genuine dispute of material fact as to whether the University's proffered reasons for failing to hire her are "pretextual—i.e. unworthy of belief." Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995). To that end, Annett relies on four pieces of circumstantial evidence: (1) the "very close" temporal proximity between her April 24, 2002 complaint to the EOO office that it was not in compliance with the conciliation agreement and the EOO's decision prior to May 8, 2002 not to interview her for the EOO assistant directorship; (2) a handwritten note made by an unnamed EOO search committee member stating that Annett "may be strong but would she be for KU," (Appellant's App. at 134), and a question by another committee member regarding whether Annett had filed suit against the University; (3) evidence that Annett was initially ranked equal to or better than the applicant eventually selected; and (4) the letter to Annett declining her candidacy, which incorrectly stated that the applicant hired had experience in "unclassified searches." (Appellant's App. at 117.)

Regarding Annett's claim that temporal proximity alone may demonstrate pretext, we have stated that close temporal proximity is a factor in showing pretext, yet is not alone sufficient to defeat summary judgment. Pastran v. K-Mart Corp., 210 F.3d 1201, 1206 (10th Cir. 2000). Annett seeks to distinguish Pastran by pointing to the "very close" temporal proximity between her complaint before the EOO office and its decision not to interview her. (Appellant's Br. at 42.) She also draws our attention to language in Ramirez stating that temporal proximity of under two months was "sufficiently probative of a retaliatory motive to withstand summary judgment." 41 F.3d at 596. However, our discussion in Ramirez focused on whether temporal proximity could establish causation for purposes of establishing a prima facie case, and not whether it sufficed to demonstrate pretext at the third prong of the McDonnell-Douglas burden-shifting framework. See, e.g., Anderson, 181 F.3d at 1179 (characterizing Ramirez as holding that a "one and one-half month period between protected activity and adverse action may, by itself, establish causation").

Although Annett would have us broaden the scope of Ramirez to apply to pretext analysis where there is "very close" temporal proximity, we decline to do so. "The burden of establishing a prima facie case [in the McDonnell Douglas framework] is not onerous." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). It is because of this relatively lax burden that we allow

- 14 -

temporal proximity between a protected activity and an adverse action to establish a prima facie case; for the same reason, we have not imported this lessened standard to pretext analysis where the burden is more demanding and requires a plaintiff to assume "the normal burden of any plaintiff to prove his or her case at trial." Flasher, 986 F.2d at 1316. Allowing "very close" temporal proximity to operate as a proxy for this evidentiary requirement would not further the substantive purposes of our inquiry at this stage.

Thus, we must consider whether Annett's evidence of temporal proximity combined with the other factors demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the University's proffered reasons for its failure to hire her such that "a reasonable factfinder could rationally find them unworthy of credence . . . ." Anderson, 181 F.3d at 1179. Mere conjecture that the University acted with discriminatory reasons will not suffice to establish pretext. Id.

We agree with the district court that none of the comments made by the committee members are probative of pretext. "When assessing whether [a] plaintiff has made an appropriate showing of pretext, we must consider the evidence as a whole." Danville v. Regional Lab Corp., 292 F.3d 1246, 1250 (10th Cir. 2002). According to deposition testimony, the only discussion of Annett's prior lawsuit was an answer in the affirmative to a committee member's question

whether Annett was "the person who had filed a lawsuit." (Appellant's App. at 93). Moreover, mere mention of Annett's lawsuit did not prevent committee members from giving Annett relatively high rankings. Indeed, neither mentioning Annett's prior suit nor questioning whether Annett was the right person for the job, in the context of evaluating her candidacy and when viewed in light of the evidence as a whole, supports a reasonable inference of pretext.

Turning to Annett's argument that three out of what she considered to be the four "official" committee members initially ranked Annett higher than or equal to the selected candidate, we agree with the district court that this allegation is not supported by the record. First, the record establishes that six committee members ranked the candidates.[4] Of those six committee members, only two ranked Annett higher than the selected candidate. Moreover, of the remaining three interviewees, two were ranked higher than Annett by all six committee members, and one was ranked higher than Annett by four members. Because these rankings reveal that the four candidates interviewed were all ranked higher than Annett, we conclude that Annett has failed to establish pretext on this point.

Finally, Annett alleges that the EOO's letter falsely stated that each of the

---

[4] Annett's argument that the "official" search committee consisted of four people is grounded in a Recruitment Plan dated March 15, 2000, which only lists four individuals. However, the affidavits of four EOO staff members along with the actual evaluations completed by the committee members demonstrate that six individuals completed evaluations in April and May, 2000.

interviews had experience, inter alia, in "facilitating unclassified searches." (Appellant's App. at 117.) Annett points to language in the selected candidate's deposition stating that she was involved in recruitment only for classified positions in her previous employment as recruitment coordinator in the University's political science division, as the division did not have unclassified staff positions. Although Annett would have us conclude that this inconsistency demonstrates that the EOO's explanation for not hiring Annett was a front for unlawful discrimination, we agree with the district court that in light of the "overwhelming evidence corroborating the explanations given by [the] letter," Annett v. Univ. of Kansas, 216 F. Supp. 2d 1249, 1264 (D. Kan. 2002), the mistaken use of the words "unclassified searches" does not create a genuine issue of material fact.

Because Annett has failed to demonstrate that the University's legitimate reasons for failing to hire her as assistant direct of the EOO are pretextual, we **AFFIRM** the grant of summary judgment to the University.