**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 10, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

OLIVER TAPIA,

        Plaintiff-Appellant,

v.

CITY OF ALBUQUERQUE,

        Defendant-Appellee.

No. 05-2028
(D.C. No. 03-0378 MV/WDS)
(D. N.M.)

**ORDER AND JUDGMENT** *

Before **TYMKOVICH** , **PORFILIO** , and **BALDOCK** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Oliver Tapia sued his employer, the City of Albuquerque, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3, alleging that he was retaliated against for exercising his rights under Title VII. The district court

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

granted the City's motion for summary judgment, holding that Tapia had not presented a prima facie case of retaliation. We exercise jurisdiction under 28 U.S.C. § 1291, and affirm.

## I. Background

Tapia began working for the City in 1987. During the relevant time, from April 2000 until August 2002, Aplt. Br. at 7, he worked for the Public Works Department as a field collector, turning on and off water connections and investigating illegal water usage. Tapia's direct supervisors were first Tina Archuleta and later Barbara Romero. They in turn reported to Sheron Matson, Manager of Customer Services for the Public Works Department.

Sometime in 2001, Tapia reported to his union that he was subjected to harassment and discrimination. In a letter sent to Matson by the union on August 28, 2001, which followed up on an August 17 meeting, the union representative set forth Tapia's complaints that he was treated unfairly, he was required to adhere to certain policies and job requirements that other employees in similar jobs did not have to adhere to, and he was monitored. Aplee. Supp. App. at 45. The letter also stated that if Tapia continued to be monitored and required to perform additional duties, the union would file a formal grievance. After she received this letter, Matson asked for more specific information, but she received

-2-

none.  *Id.* at 158-59.  She did not alter her management of Tapia.  *Id.* at 159.  No formal grievance was ever filed.

From September 14, 2001, to November 14, 2001, Tapia took Family and Medical Leave Act (FMLA) leave for work-related depression and stress.  Before returning to work, he requested a transfer due to conflicts with Archuleta and Matson.  In a memorandum dated November 26, 2001, LaVerne Armijo, a City Labor Relations Officer, stated that she had told Tapia in a November 6 meeting that she could not approve a transfer for three reasons:  (1) a transfer was not available because of a hiring freeze; (2) the recent change in administrations after the November elections; and (3) Tapia's reason—his dislike of Matson and Archuleta—was not a favored basis for a transfer.  Aplt. App. at 113.  The memorandum also noted that when Armijo told Tapia that it would be another month before she could finally determine if he could be transferred, he responded that if she put him back in his same job, he was afraid he would "knock her [meaning either Archuleta's or Matson's] head off."  *Id.*  Armijo warned him that this was a serious threat.

On November 19, 2001, Tapia filed a complaint with the Equal Employment Opportunity Commission (EEOC) asserting that he had been retaliated against and the retaliation consisted of Matson watching his work more closely than she watched the work of others.  On December 4, the City received

-3-

notice of the charge.  That same day, Matson, who had no knowledge of the EEOC complaint, [1] gave Tapia a letter of instruction directing him not to make verbal threats to employees.  The letter warned that future disciplinary action was possible if Tapia made another threat.     *Id.* at 112.  The Public Works Department received notice of the EEOC charge on December 6.

In a July 23, 2002 letter, Tapia again requested a transfer based on perceived problems with Matson.  Accordingly, on August 12, he was transferred to a different location within the same department, reporting to a different supervisor.  In 2003, Tapia applied for a new position as a utility technician.  Although he was selected for the job by a committee, the Department Director, who had final hiring authority, chose other persons he deemed more qualified for the job.

Also in 2003, Tapia filed this Title VII action asserting retaliation.  In response to the City's motion for summary judgment, Tapia alleged that he suffered five separate adverse employment actions:  (1) he was required to perform jobs that other employees were not required to perform; (2) unlike other

---

[1]     Tapia testified at his deposition that he did not tell Matson that he had filed an EEOC complaint, and he did not know when she learned of it.  Neither the pages of Matson's deposition included in the parties' appendices nor her affidavit indicate that she knew of the EEOC complaint.  Although the record shows that Matson knew about the union letter, the record does not show that she had knowledge of Tapia's EEOC activity.

employees, his supervisors monitored him in a harassing and retaliatory way; (3) he was disciplined by the letter of instruction; (4) he was subjected to continuing harassment after he returned to work following his FMLA absence, filed his EEOC complaint and made other informal complaints to his supervisors; and (5) he was denied a transfer to the utility technician position for which he was selected and qualified.

The district court granted the City's motion for summary judgment, finding that Tapia failed to present a prima facie case of retaliation. The court found that only the second claim—that he was monitored in a harassing manner by his supervisors—could constitute an adverse employment action, and only if the harassment was sufficiently severe. But the court also found that Tapia failed to show a causal link between his supervisor's behavior and his protected activities.

## II. Analysis

We review the district court's grant of summary judgment de novo, viewing the record evidence in the light most favorable to Tapia. *See Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). "We affirm unless [he] points to evidence in the record establishing a genuine issue of material fact." *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1209 (10th Cir. 2003) (citing Fed. R. Civ. P. 56(c)). He cannot create a genuine issue of material fact with

unsupported, conclusory allegations. *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004).

Title VII prohibits retaliation against an employee who opposes any unlawful employment practices or files a charge with the EEOC. *See* 42 U.S.C. § 2000e-3(a). Because there is no direct evidence of retaliation in this case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), provides the proper three-step framework for analysis. *See Annett*, 371 F.3d at 1237. Under that framework, an employee must first present a prima facie case of retaliation. *Id.* If the employee does so, the burden then shifts to the employer "to produce a legitimate, nondiscriminatory justification for taking the disputed employment action." *Id.* If the employer satisfies this burden, the employee then must provide evidence that the employer's proffered reasons are merely a pretext for discrimination. *Id.* Like the district court, we conclude that Tapia failed to show a prima facie case of retaliation. Thus, we do not address the last two steps of the analysis.

For a prima facie case of retaliation, an employee must prove that (1) he "engaged in protected opposition to discrimination;" (2) he suffered "an adverse employment action"; and (3) "there exists a causal connection between the protected activity and the adverse action." *Stover v. Martinez*, 382 F.3d 1064, 1071 (10th Cir. 2004). It is undisputed that Tapia met the first requirement.

The City does not dispute that Title VII protected Tapia against discrimination for filing an informal union grievance in August 2001 and an EEOC charge in November 2001.

The second prima-facie case requirement is that Tapia prove that he suffered an adverse employment action. "An adverse employment action constitutes 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Annett*, 371 F.3d at 1237 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Although what constitutes an "adverse employment action" is inherently a fluid and fact-based consideration, "a mere inconvenience or an alteration of job responsibilities will not suffice." *Id.* at 1239 (quotations omitted).

On appeal, Tapia argues that the district court incorrectly found only one adverse employment action—the allegedly harassing behavior of his supervisors of following him and monitoring him while he was working. He contends he also suffered two other adverse employment actions: (1) when he received the letter of instruction and (2) when he did not receive a transfer. The City argues that none of these three constitutes an adverse employment action.

We agree with the district court that sufficiently severe harassing, following, and monitoring of an employee could create an adverse employment

action.[2] *Cf. Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1264 (10th Cir. 1998) (recognizing that co-worker hostility or retaliatory harassment if sufficiently severe may be adverse employment action).  In this case, however, the evidence of Tapia's being followed consists only of his own uncorroborated deposition testimony and nothing else.  He asserts, for example, that Matson, Romero, or Archuleta followed him, although this occurred both before and after he engaged in protected activity.  But Matson, Romero, and Archuleta deny his assertions.  And none of Tapia's co-workers provided testimony to support these allegations.  In short, no evidence in the record, apart from Tapia's deposition testimony, supports his claim.  Tapia's unsupported assertions, however, "carry no probative weight in summary judgment proceedings."  *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).  His mere subjective belief of discrimination was insufficient to preclude the grant of summary judgment. *Stover*, 382 F.3d at 1074 n.2;  *see also Miller v. Auto. Club of N.M., Inc.*, 420 F.3d 1098, 1122 (10th Cir. 2005) (recognizing plaintiff's own suspicions are insufficient to establish prima facie case).

Also, Tapia asserts that Matson monitored his work, and that the monitoring humiliated him and caused him stress.  Some deposition testimony

---

[2]    While Tapia mentions this alleged adverse employment action in his appellate brief, his actual argument focuses only on the letter of instruction and requests for a transfer.

supports Tapia's assertion that Matson asked other employees to monitor his work. Gerald Chavez, for example, testified that Matson had asked him a few times to check to see if water could be turned off when Tapia indicated that it could not be. Aplt. App. at 117. Another co-worker, Elias Sanchez, also did so on two occasions. *Id.* In addition, Loretta Rael—a co-worker—testified at her deposition that Matson periodically checked Tapia's work logs and made photocopies of them. *Id.* at 124. Also, Rael stated that Matson timed how long it took Tapia to get to a job and to complete it. *Id.*

While the record is clear that Matson did monitor Tapia's work, the record is equally clear that Tapia did not suffer adverse employment action due to the monitoring. No change in his employment status occurred: his job, pay and benefits at all times remained the same. *See Annett*, 371 F.3d at 1237 (requiring significant change in employment status for adverse employment action). Thus, under the circumstances presented here, the district court incorrectly concluded the harassing, following, and monitoring constituted an adverse employment action.

Next, Tapia argues that the letter of instruction constituted an adverse employment action by the City. He contends that the letter "[wa]s a *per se* act of harm to [his] reputation, humiliating, and dramatically adverse." Aplt. Br. at 18. He further asserts that the letter resides in his personnel file and could adversely

affect his future employment. He characterizes the letter as discipline imposed within two weeks of his filing an EEOC charge. [3]

It is true that warning letters and reprimands can be adverse employment actions. *Medina v. Income Support Div.*, 413 F.3d 1131, 1137 (10th Cir. 2005). "A reprimand, however, will only constitute an adverse employment action if it adversely affects the terms and conditions of the plaintiff's employment—for example, if it affects the likelihood that the plaintiff will be terminated, undermines the plaintiff's current position, or affects the plaintiff's future employment opportunities." *See id.*

Like the district court, we cannot conclude that the letter of instruction Tapia received constituted adverse employment action. The letter was not disciplinary. It did not affect his pay, benefits, or employment status. *Cf. Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 857 (10th Cir. 2000) (finding no adverse action under similar circumstances). Indeed, he continued to work for the Public Works Department, and the City subsequently approved his transfer to another job, just as he requested. The fact that the letter indicates that Tapia could be disciplined for a future threat is not enough to make the letter itself disciplinary

---

[3] Tapia maintains that his comment about knocking a superior's head off was not a verbal threat and the perception that it was a threat was flawed. Regardless of whether he intended to threaten anyone, his comment was reasonably perceived to be a threat.

action. *Cf. Jeffries v. Kansas*, 147 F.3d 1220, 1232 (10th Cir. 1998) (deciding that unrealized threats do not rise to level of actionable retaliation). Finally, the Public Works Department did not even receive notice of the EEOC action until two days after Tapia received the letter.

Third, Tapia argues that the failure to transfer him to another job both in 2001 and after he filed his EEOC complaint and made other informal complaints were adverse employment actions. He contends the City delayed his transfer because he had made complaints. Also, he contends that the failure to transfer him resulted in a deterioration of his health and caused him to be "humiliated and damaged." Aplt. Br. at 20.

To support his argument, Tapia points to a letter he wrote to Ted Asbury, the head of the Public Works Department on July 23, 2002, requesting a transfer because he was harassed, monitored and discriminated against for no good reason. The City, in fact, approved a transfer in response to this letter. Nothing in the record indicates that Tapia was denied a transfer after he sought a job for which he was qualified and for which the City was seeking applicants. *See Amro v. Boeing Co.*, 232 F.3d 790, 797 (10th Cir. 2000).

The City's failure to select Tapia for the utility technician position also was not an adverse employment action, because, as the district court found, the position initially would have resulted in an immediate demotion for Tapia. Any

-11-

future opportunities related to that job could not create an adverse employment action because those opportunities depended upon his completing certification and passing through training levels over a two to three year period. [4]

Because Tapia has failed to establish an adverse employment action, he cannot establish a prima facie case of retaliation. We therefore conclude that the district court correctly granted summary judgment in favor of the City.

The judgment of the district court is AFFIRMED. [5]

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

---

[4] Tapia does not continue to assert on appeal that the alleged change in job duties or the alleged continuing pattern of harassment after he returned to work from his FMLA absence were adverse employment actions. We conclude these issues are therefore waived. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (deciding that issue not raised in opening appellate brief is waived). Even if they were not waived, we conclude that the district court correctly decided that they did not constitute adverse employment actions.

[5] The City argues that Tapia included documents in his appendix that were not a part of the district court record. These documents are the EEOC determination and the right to sue letter. Under Fed. R. App. P. 30(a)(1)(D), these documents should not have been included in the appendix.