FILED
United States Court of Appeals
Tenth Circuit

**November 29, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RONNIE R. ROLLAND,

      Plaintiff-Appellant,

v.

PRIMESOURCE STAFFING, LLC,
and RENEE RAABE,

      Defendants-Appellees.

No. 06-1491
(D.C. No. 06-CV-00810-MJW-BNB)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **EBEL**, and **MCCONNELL**, Circuit Judges.

---

Plaintiff-Appellant Ronnie R. Rolland appeals from the district court's

summary judgment order in favor of Defendant-Appellees Primesource Staffing

LLC ("Primesource") and Renee Raabe, the owner of Primesource. The district

court concluded that Mr. Rolland did not introduce sufficient evidence to create a

---

[*]After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

triable issue as to whether Primesource unlawfully terminated him because of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. We agree and, exercising jurisdiction pursuant to 28 U.S.C. § 1291, affirm.

## I.      Background

Primesource is a "temporary-to-permanent" employment agency that plugs temporary employees into positions with Primesource's client businesses. Ideally, a Primesource temporary employee who performs well may eventually receive a permanent position with a Primesource client. Defendant Renee Raabe owns Primesource. Mr. Rolland is an African-American male; he was originally hired by Primesource in June 2005.

On June 14, 2005, Mr. Rolland received (and signed for) a personnel manual. He did not, however, sign an employment agreement with Primesource. Pertinently, that personnel manual provides that all employees are hired "at-will." Mr. Rolland testified at his deposition that Primesource regularly avails itself of the privilege of terminating its "at-will" employees without any termination proceeding or hearing. Primesource's employment manual also delineates the firm's "Equal Employment Opportunity / Unlawful Harassment" policy and "EEO / Harassment Complaint Procedure," as well as a performance quality evaluation system. Although this system purports to allow Primesource "to gain input on [the employee's] job performance and provide [the employee] with valuable,

positive and/or developmental feedback," Primesource never provided Mr. Rolland any written performance reviews during his time with the firm.

After being hired, Mr. Rolland worked for a number of Primesource's clients between June 2005 and January 2006. On January 5, 2006, Primesource originally instructed Mr. Rolland to report to work the following day at a company called Woodstream. Sometime later on January 5, a Primesource employee, Eric Jones, checked Mr. Rolland's personnel record and decided he could not assign Mr. Rolland to Woodstream because of Mr. Rolland's past poor performance. Mr. Jones instructed another Primesource employee to telephone Mr. Rolland to tell him not to show up at Woodstream.

Mr. Rolland apparently never received the message; instead, he arrived at Woodstream early the next morning and began working. When Mr. Jones and a second Primesource temporary worker arrived at Woodstream thereafter, Mr. Jones took Mr. Rolland aside to ask him why he was there. Mr. Jones then informed Mr. Rolland that he could no longer work for Woodstream because of Primesource's concerns about his past performance; he also indicated that Mr. Rolland should call Michelle Donnel, a Primesource manager, for clarification. Mr. Rolland did so, and Ms. Donnel informed him that Primesource had opted to terminate Mr. Rolland's employment with the company in light of Mr. Rolland's poor work performance in past positions.

In his pro se suit against Primesource and Ms. Raabe, Mr. Rolland claimed violations of 42 U.S.C. § 2000e, et seq., ("Title VII"), 42 U.S.C. § 1981, and Mr. Rolland's Fifth and Fourteenth Amendment rights under the United States Constitution. Specifically, Mr. Rolland claimed that the actions of Mr. Jones and Ms. Donnel, taken without affording Mr. Rolland a disciplinary hearing, notice of his performance problems or access to his personnel file, were discriminatory. On Primesource's motion, the district court granted Primesource summary judgment on October 18, 2006. Mr. Rolland timely appealed.[1]

## II.    Discussion

### A. Standard of Review

"We review de novo the district court's grant of summary judgment, applying the same legal standard as the district court." Lewis v. Circuit City Stores, Inc., 500 F.3d 1140, 1146 (10th Cir. 2007). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[1]After granting Primesource summary judgment, the district court denied Mr. Rolland's request for *in forma pauperis* ("IFP") status to proceed on appeal. This court also denied Mr. Rolland IFP status in a published order dated August 7, 2007. See Rolland v. Primesource Staffing, L.L.C., 497 F.3d 1077, 1078-79 (holding that "Rolland has failed to show the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal"). That order noted that Mr. Rolland could still opt to pay the appeal filing fees, id. at 1079, and he has since done so. As such, we granted Mr. Rolland's motion to reinstate his appeal on October 19, 2007.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

In scrutinizing a summary judgment grant, "we view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Elliot Indus. Ltd. P'ship v. BP Am. Prod. Co., 407 F.3d 1091, 1107 (10th Cir. 2005) (quoting Martin v. Kansas, 190 F.3d 1120, 1129 (10th Cir. 1999)). Of course, "unsupported conclusory allegations do not create a genuine issue of fact," Annett v. Univ. of Kan., 371 F.3d 1233, 1237 (10th Cir. 2004), nor does the presence of a "mere scintilla of evidence." Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993).

**B. Merits**

The district court gleaned five claims from Mr. Rolland's pro se complaint: four claims under Title VII – for discriminatory discharge, disparate treatment, negligence, and miscellaneous Title VII violations – and a claim under § 1981.[2]

Because Mr. Rolland offered no direct evidence of discrimination, we analyze his claim under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Young v. Dillon Cos., Inc., 468 F.3d 1243, 1249 (10th Cir. 2006). Under McDonnell Douglas, the plaintiff bears

---

[2]Mr. Rolland is proceeding pro se; as such, this court must "construe[] liberally" his pleadings. Hall v. Belmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Although this court need not "assume the role of advocate" for Mr. Rolland, it must discern whether the pleadings, reasonably read, state valid claims on which he could prevail. Id.

the burden of establishing a prima facie case of racial discrimination based on his indirect or circumstantial evidence. Young, 468 F.3d at 1249. Assuming the plaintiff can satisfy this threshold requirement, "the burden shifts to the employer to articulate some legitimate, non-discriminatory reason for the adverse employment action." Id. Thereafter, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered justification is pretextual. Id. This burden-shifting analysis applies both to Title VII and § 1981 claims. See Perry v. Woodward, 199 F.3d 1126, 1135 (10th Cir. 1999).

The district court concluded that "plaintiff has not established a prima facie case for his claim of racial discrimination because he has made no showing that any of the defendants' actions occurred under circumstances giving rise to an inference of discrimination." Although we believe this language conflates the distinct steps of the McDonnell Douglas inquiry, the district court correctly concluded that Mr. Rolland has failed, as a matter of law, to carry his burden.

Mr. Rolland has satisfied three of the four prongs of a prima facie discriminatory discharge case[3]: he is African-American, Primesource terminated him, and there is no evidence his position was eliminated. See Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1229 (10th Cir. 2000). However, he

---

[3]To establish a prima facie case of discriminatory discharge, Mr. Rolland must show: (1) that he is a member of a protected class; (2) that he was qualified for his position; (3) that he was discharged from his position; and (4) that the position was not eliminated after his termination. Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1229 (10th Cir. 2000).

falters in his attempt to show he was qualified – in fact, evidence introduced by Mr. Rolland himself noted that he had slept on the job while working for one of Primesource's clients.

Even if we were to conclude that Mr. Rolland had borne his initial burden, Primesource has more than satisfied its end of the McDonnell Douglas inquiry, and Mr. Rolland has offered nothing that suggests that Primesource's proffered justification for terminating him was pretextual. See Perry, 199 F.3d at 1135 ("If the defendant is able to articulate a valid reason, the plaintiff can avoid summary judgment only if [he] is able to show that a genuine dispute of material fact exists as to whether the defendant's articulated reason was pretextual." (quotation marks omitted)). Primesource explained that it fired Mr. Rolland because he had performed poorly in the positions to which Primesource assigned him prior to January 6, 2006. Primesource supported this position with ample evidence from Mr. Rolland's personnel file. Additionally, Primesource noted that Mr. Rolland, like all of its employees, was an "at-will" employee.

Under the McDonnell Douglas paradigm, Mr. Rolland "must demonstrate that the defendant's proffered race-neutral reasons were so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief." Young, 468 F.3d at 1250 (internal quotation marks and brackets omitted). For his part, Mr. Rolland contends that evidence of pretext can be found in Primesource's failure to (1) inform him of his deficient performance

prior to his termination, (2) allow him access to his personnel records, and (3) avail him of Primesource's problem resolution procedure. See Kendrick, 220 F.3d at 1230 (laying out three typical ways that plaintiffs may demonstrate pretext). However, Mr. Rolland admitted that Primesource routinely terminated other employees without informing them that they were performing poorly, allowing them access to their personnel files or holding a hearing. Additionally, the Primesource handbook does not provide for a pre-termination hearing or any other mandatory pre-termination procedure.

Thus, even though we must credit Mr. Rolland's testimony that he received neither notice, nor access to his file, nor a hearing, he still was not "treated differently from other similarly-situated employees." Kendrick, 220 F.3d at 1230. Mr. Rolland's bald assertions to the contrary do not amount to proof that Primesource's "tendered reason" for terminating him "was not the genuine motivating reason, but rather was a . . . sham reason." Reynolds v. Sch. Dist. No. 1, 69 F.3d 1523, 1535 (10th Cir. 1995).[4] In addition, aside from his complaint's conclusory allegations, Mr. Rolland has introduced no evidence to suggest that

---

[4]It is also worth noting that Mr. Rolland testified that the Primesource employee who replaced Mr. Rolland at the job site he reported to on the day he was terminated was also African-American. (See D. Ct. Docket No. 32, Exh. 5 at 115-16 (Rolland Deposition) ("So Diane and I were working and Eric [Jones] comes in. When he comes in, he comes in with a younger black guy . . . . He [Jones] said, Well, I have this guy here [to work at Woodstream that day].") This information deflates Mr. Rolland's contention that Primesource's decision to terminate him was discriminatory.

Primesource's decision to terminate him stemmed from unlawful discriminatory animus.

## III.    Conclusion

Although the summary judgment standard requires us to view the evidence in the light most favorable to the non-moving party (Mr. Rolland), there must be some evidence to view favorably.  Where, as here, the non-moving party has adduced nothing, nothing in the way of a triable issue can come to light.  As such, we AFFIRM.[5]

Entered for the Court

David M. Ebel
Circuit Judge

---

[5]In light of our holding, Mr. Rolland's pending motions before this court are hereby DENIED.