**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 24, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

NEKIA ANDERSON,

      Plaintiff-Appellant,

v.

WINTCO INC., DBA Sonic Drive-In
Huntsville Inc.,

      Defendant-Appellee.

No. 08-6074
(D.C. No. 5:07-CV-00468-M)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **PORFILIO**, and **O'BRIEN**, Circuit Judges.

---

Plaintiff Nekia Anderson appeals the district court's grant of summary

judgment in favor of her former employer, Wintco, Inc., doing business as Sonic

Drive-In-Huntsville, Inc., (Sonic), in her case alleging a sexually hostile work

environment and retaliation in violation of Title VII of the Civil Rights Act of

1964.  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Ms. Anderson worked as a carhop at the Shawnee, Oklahoma, Sonic for a few months in 2004 and, as relevant here, from June to the end of July 2005. The store manager and Ms. Anderson's supervisor was Dave Sharon. Ms. Anderson's complaint alleged that during her 2005 employment with Sonic, Mr. Sharon sexually harassed her, resulting in a hostile work environment in violation of Title VII. Ms. Anderson alleged that on several occasions throughout her employment, Mr. Sharon asked her to show him a "boob shot," which she refused; that he once rubbed her stomach with ice, and once told her that watching her lick cupcake frosting off her fingers "turned him on." Aplt. App. at 353, 355, 357, 364-65. Ms. Anderson also alleged Mr. Sharon told her he "likes hummers," *id*. at 361, a term both he and she understand to mean oral sex, *id*. at 361, 427.

Ms. Anderson alleged that Mr. Sharon retaliated against her for refusing his requests for a "boob shot," by cutting and changing her hours and by assigning her to work at the fountain – where employees do not earn tips – despite promising her when he hired her that she would not be assigned to work the fountain. Ms. Anderson quit after she was again assigned to work at the fountain. She did not report any of the incidents of harassment to any Sonic manager or employee until after she quit.

The district court granted Sonic's motion for summary judgment. It ruled that the undisputed evidence demonstrated that Sonic had exercised reasonable

care to prevent and correct any discriminatory harassing behavior by adoption of an effective anti-harassment policy, and that Ms. Anderson had unreasonably failed to take advantage of that policy. Thus, it ruled that Sonic had established an affirmative defense to Ms. Anderson's claims of hostile work environment. The court also ruled that Ms. Anderson had not engaged in any protected opposition related to the discriminatory hostile work environment – because she never complained of the harassment – and, thus, failed to demonstrate a prima facie case of retaliation. Ms. Anderson appeals the grant of summary judgment with respect to each of these rulings.

## II.

"We review a grant of summary judgment *de novo*[,] . . . consider[ing] the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005) (quotations omitted). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A.

The district court assumed arguendo, as do we, that Ms. Anderson established a prima facie case of a hostile work environment claim based on sexual harassment. In addition to establishing the hostile work environment elements, the plaintiff must also identify a basis for holding the employer liable under Title VII. *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007). "[A]n employer is not automatically liable for harassment by a supervisor who creates the requisite degree of discrimination." *Faragher v. City of Boca Raton*, 524 U.S. 775, 804 (1998) (quotation omitted). An employer is vicariously liable if a supervisor takes a tangible employment action against the victimized employee. *Id*. at 807-08; *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 760 (1998). If, however, no tangible employment action was taken against the employee, an employer may assert an affirmative defense to vicarious liability if it can prove two elements: (1) "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) the plaintiff "unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765. This defense is commonly known as the *Faragher-Ellerth* defense.

1.

Ms. Anderson first argues on appeal that Sonic is not entitled to the *Faragher-Ellerth* defense because a tangible employment action was taken against her. She testified that her carhop hours were reduced and changed from morning to afternoon, resulting in less tip income, and she was occasionally assigned to work the fountain, which did not earn tips. She argues these actions constituted tangible employment actions against her. Examples of tangible employment actions include "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761. An employee does not suffer a tangible employment action when she is reassigned to a more inconvenient job, *see id.*, or when a supervisor merely "change[s] her work schedule and ask[s] her to perform tasks which she had not previously been asked to perform." *Watts v. Kroger Co.*, 170 F.3d 505, 510 (5th Cir. 1999).

Sonic presented evidence that it required carhops occasionally to work the fountain, and Ms. Anderson did not dispute this evidence; indeed, she acknowledged that "could have" been Sonic's policy. Aplt. App. at 121. Because it is undisputed that the job duties of a carhop at Sonic included some fountain work, requiring Ms. Anderson to work at the fountain on a few occasions was not a tangible employment action. Ms. Anderson testified that her carhop hours were cut and changed to times that typically earn less in tips and that employees

working the fountain did not earn tips. Despite Ms. Anderson's assertion that she was assigned to hours and assignments that earned less money, she failed to present any supporting evidence demonstrating that she did, in fact, earn less money because of either her occasional fountain assignments or any change in her hours. *See Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004) (stating that "unsupported conclusory allegations do not create a genuine issue of fact") (quotation omitted). We conclude the district court did not err in finding that Ms. Anderson did not present evidence that would allow a reasonable jury to find that a tangible employment action was taken against her.

2.

Ms. Anderson next argues that the district court erred in finding that Sonic exercised reasonable care to prevent and promptly correct any harassing behavior. We disagree.

Sonic has a facially effective anti-harassment policy. It (1) provides a clear explanation of prohibited conduct; (2) protects employees who report claims of harassment from any retaliation; (3) offers a flexible reporting process that provides multiple avenues for complaints to be made, specifically stating that complaints can be made to supervisors, managers, or two named corporate executives, giving toll-free phone numbers for the latter; (4) mandates that Sonic will thoroughly investigate all reports and complaints of harassment; (5) gives assurance that the confidentiality of the individuals bringing harassment claims

will be protected to the extent possible; and (6) dictates that Sonic will take immediate and appropriate corrective or disciplinary action when it determines that a complaint of harassment is substantiated. *See EEOC Enforcement Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisors*, § V.C.1, 1999 WL 33305874, at *9 (June 18, 1999) (listing elements of an effective anti-harassment policy and complaint procedure).

The anti-harassment policy is included in Sonic's employee handbook. Ms. Anderson testified that she knew there was an employee handbook, had looked at it, and signed a form acknowledging receipt of the employment handbook. Aplt. App. at 115-17.[1] Most significantly, Ms. Anderson testified that she was aware at the beginning of her employment with Sonic that it had an anti-harassment policy. *Id.* at 116. Further, Ms. Anderson admitted that Sonic had anti-harassment and anti-discrimination posters at her Sonic workplace. *Id*. at 116-17.

Although having an effective anti-harassment policy is not in itself dispositive, "distribution of a valid antiharassment policy provides compelling proof that [an employer] exercised reasonable care in preventing and promptly

---

[1]     Ms. Anderson argues that the district court overlooked her testimony that her memory is vague as to whether the signed form was intended to acknowledge receipt of the handbook, but regardless of her memory, she hand-wrote her name in the blank provided in the following phrase: "I, <u>Nekia Anderson</u>, hereby acknowledge receipt of the Sonic Employee Handbook," and she signed the form at the bottom. *Id*. at 197.

correcting sexual harassment." *Weger v. City of Ladue*, 500 F.3d 710, 719 (8th Cir. 2007) (quotation marks and citations omitted). An employer with an effective written policy is not, however, automatically shielded from vicarious liability, and may be found liable based on a lack of reasonable care under the first prong of the *Faragher-Ellerth* defense if it fails to enforce its policy or fails to investigate and correct harassment claims. *See Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 118 (3d Cir. 1999) ("*Ellerth* and *Faragher* do not . . . focus mechanically on the formal existence of a sexual harassment policy"; if not effectively enforced, such a policy is no defense).

Ms. Anderson contends that Sonic's policy was not effectively enforced because it did not provide adequate training about its policy. As evidence, she points to an affidavit from an assistant supervisor at Sonic, Ms. Coffman, who stated in her affidavit that she never received any training enabling her to deal with complaints of harassment in the workplace. This scintilla of evidence from one assistant supervisor relating to her lack of training is insufficient to create a genuine issue of fact. Her statement creates no inference that Sonic failed to train its managers and supervisors because Ms. Coffman was only an assistant supervisor. Moreover, Ms. Anderson never complained to Ms. Coffman, so Ms. Coffman's lack of training never became relevant. Further, regardless of Ms. Coffman's lack of training, Sonic did give *Ms. Anderson* a copy of the anti-harassment policy and *Ms. Anderson* knew about Sonic's anti-harassment policy

when she began her employment. In short, the relevant, undisputed evidence demonstrates that Sonic adequately distributed its policy to Ms. Anderson and made her aware of it.

Ms. Anderson also argues that Sonic failed to investigate claims of harassment, again pointing to Ms. Coffman's affidavit. Ms. Coffman stated that Sonic's area manager, Mr. Klaus, investigated a rumor that she and Mr. Sharon were having an affair by conducting the investigation in both her and Mr. Sharon's presence. She states she did not feel comfortable telling Mr. Klaus that Mr. Sharon had sexually harassed her with him present. The only inference that can be drawn from Ms. Coffman's (and Mr. Klaus's) affidavits on this point, however, is that Mr. Klaus was investigating a complaint about a possible consensual affair, not a harassment claim.

Ms. Coffman also stated that female employees complained to her about how Mr. Sharon rubbed their backs or put ice down their shirts. She does not state, however, that these employees complained to her of harassment; that they complained of harassment to a Sonic manager, supervisor or the executives named in the anti-harassment policy; or that she reported these concerns to anyone at Sonic other than Mr. Sharon. This evidence, therefore, is insufficient to demonstrate that Sonic knew or should have known of any harassment complaints. This evidence does not demonstrate that Sonic or Ms. Klaus failed to investigate claims of harassment or failed to enforce Sonic's anti-harassment policy.

Ms. Coffman also made the non-specific, conclusory and unsupported allegation that Mr. Klaus was aware of Mr. Sharon's constant and inappropriate behavior towards the girls working at Sonic. Again, "unsupported conclusory allegations do not create a genuine issue of fact." *Annett*, 371 F.3d at 1237 (quotation omitted).

We conclude that Ms. Anderson did not present evidence that would allow a reasonable jury to find that Sonic knew or should have known about harassing conduct, failed to investigate claims of harassment or otherwise failed to enforce its anti-harassment policy. Accordingly, the district court did not err in ruling that Sonic exercised reasonable care in preventing and correcting harassing behavior, thereby establishing the first element of the *Faragher-Ellerth* affirmative defense.

3.

Ms. Anderson next argues the district court erred in finding she unreasonably failed to take advantage of the preventative or corrective opportunities provided by Sonic's anti-harassment policy. Based on Ms. Coffman's affidavit, she argues that it would have been futile for her to complain. Evidence suggesting how Mr. Sharon or Mr. Klaus might have reacted had she complained to them is insufficient to create a genuine issue of fact. The anti-harassment policy named two corporate Sonic executives to whom harassment or discrimination complaints could be made and listed both a

long-distance and toll-free phone number to contact these individuals. We agree with the district court that it was not reasonable of Ms. Anderson to fail to contact these outside managerial resources or to otherwise avail herself of the preventative and corrective opportunities provided to her by Sonic. Accordingly, the district court correctly ruled that Sonic established the second element of the *Faragher-Ellerth* affirmative defense.

B.

Ms. Anderson next argues the district court erred in dismissing her retaliation claim. It ruled that Ms. Anderson never complained of any alleged harassment and, thus, never engaged in any protected opposition to discrimination, the first element of a retaliation claim. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1234 (10th Cir. 2000) (describing elements of retaliation claim). Ms. Anderson argues her denials of Mr. Sharon's requests for "boob shots" were sufficient to constitute protected opposition. We disagree. As the district court stated, "[p]rotected opposition can range from filing formal charges to voicing informal complaints to superiors," *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004). "Although no magic words are required, to qualify as protected opposition, the employee must convey to the employer his or her concern that the employer has engaged in [an unlawful] practice." *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008). It is undisputed that during her employment, Ms. Anderson never conveyed to Sonic, formally or

-11-

informally, her concerns or belief that Mr. Sharon was harassing her. Ms. Anderson does not even direct this court to any evidence that she ever expressed to Mr. Sharon that his conduct was offensive or unwelcome. Accordingly, the district court properly dismissed her retaliation claim.

Accordingly, we AFFIRM the district court's grant of summary judgment in Sonic's favor on Ms. Anderson's claims of hostile work environment and retaliation under Title VII.

Entered for the Court


John C. Porfilio
Circuit Judge