**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 30 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MICHAL F. STOVER,

       Plaintiff - Appellant,

v.

MEL MARTINEZ, Secretary, U.S.
Department of Housing and Urban
Development,

       Defendant - Appellee.

No. 03-1017

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 00-CV-2288)**

---

Darold W. Killmer, Killmer & Lane, LLP, Denver, Colorado, (Andrea E. Faley, Law Office of Andrea E. Faley, LLC, Denver, Colorado with him on the briefs) for the Plaintiff-Appellant.

Kathleen L. Torres, Assistant United States Attorney, (John W. Suthers, United States Attorney, William G. Pharo, Assistant United States Attorney with her on the brief), United States Attorneys Office, Denver, Colorado for the Defendant-Appellee.

---

Before **TACHA**, Chief Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **LUCERO**, Circuit Judge.

---

**LUCERO**, Circuit Judge.

Michal Stover brought an employment discrimination suit against the Department of Housing and Urban Development ("HUD"), arguing that HUD discriminated against her based on her race and religion, and that HUD retaliated against her for exercising her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3. The district court granted summary judgment to HUD on all claims; Stover appeals. Jurisdiction in this court is proper under 28 U.S.C. § 1291, and we **AFFIRM**.

## I

Michal Stover, a white, Jewish female attorney, began her employment with the Department of Housing and Urban Development ("HUD") in 1974, immediately after graduating from law school. She eventually was promoted to Regional Counsel (later renamed Assistant General Counsel for the Rocky Mountains) in 1984, the highest legal position in the Denver HUD office. Stover's performance reviews were almost consistently "outstanding"— the highest ranking available.

Nelson Diaz was HUD General Counsel in 1993. In September of that year, Diaz, while speaking to a group of HUD's Field Counsel including Stover, indicated that he was dissatisfied with the low number of minority Field Counsels in HUD. In August of 1994, Stover testified in an interrogatory about her

recollection of Diaz's September 1993 remarks for former HUD attorney John Dellera's Title VII suit against HUD.

Stover remained Assistant General Counsel until three years following Diaz's remarks to the HUD field counsel group and two years following her interrogatory response in the Dellera matter. In November 1996, she was reassigned to the newly created "Managing Attorney" position in the Denver office. (I R. at 16.) Although she retained her salary and benefits, she no longer exercised her former supervisory tasks; the district court below found that the reassignment was "a demotion in status and responsibilities." (Dist. Ct. Order at 2.) Diane Lindsay, Assistant General Counsel in Kansas City, also a white female, was assigned to replace Stover as Assistant General Counsel in Denver and assumed Stover's former supervisory role. Defending this reassignment, Diaz asserted that Stover's management style was inappropriate for the Denver office; he based this assessment on complaints and "somewhat critical" evaluations from staff in the Denver office, and his personal belief that Stover lacked communication skills. (I R. at 27, 97.)

Stover filed an EEO complaint in February 1997, alleging that her reassignment to the position of Managing Attorney was a result of her race, sex, age, and religion, and in reprisal for participating in EEO activity. In April 1997, Stover received a "Highly Successful" rating from George Weidenfeller, the

rating official, on her performance appraisal for the period February 1, 1996 to January 31, 1997, which Diaz reviewed. (I R. at 28, 54, 432.) Stover filed an EEO complaint in June 1997, alleging that her "Highly Successful" rating was the result of racial, gender, age, and religious discrimination. She also asserted that her lower rating was retaliation for her interrogatory answers in the Dellera suit and her previous EEO complaint. In August, as the result of an "Informal Grievance Disposition," in response to her complaint, Stover's performance appraisal rating was changed to "Outstanding." (I R. at 29, 486.)

In February 1999, Stover again received an "Outstanding" performance rating for the previous year; in particular, Stover received a monetary performance award for her "Outstanding" rating, and her work on the "El Dorita" case was specifically mentioned in the performance appraisal. (I R. at 56, 161, 168.) Nonetheless, Stover filed an EEO complaint in March of 2000, protesting the fact that HUD had not awarded her "a special act or service award" for her handling of the "El Dorita" case, which she contended resulted in a settlement for "one of the largest amounts ever in an Administrative Law Judge case." (I R. at 59, 156.) Although she received a "Certificate of Superior Accomplishment" and a cash award of $750 for her work on the El Dorita matter, prior to the filing of the March 2000 EEO complaint regarding this issue, (I R. at 157), Stover

regarded this award as untimely and "not commensurate with [her] achievement." (I R. at 59.)

HUD advertised a new "Supervisory Attorney-Advisor" position for the Denver office in November 1999. Ellen Dole, a white female, was selected for this position. Although Stover did not apply for this position, in her March 2000 EEO complaint, she alleged that HUD did not offer her this position non-competitively, as she believed it should have, in retaliation for her previous EEO complaints and her participation in the Dellera suit. Also in her March 2000 EEO complaint, Stover claimed she was denied a November 1999 special assignment in retaliation for her EEO complaints and participation in the Dellera suit. Ellen Dole had also been selected for that special assignment.

When Stover's replacement as Assistant General Counsel in Denver, Diane Lindsay, retired in June 2000, Stover requested that she be appointed to her former position of Assistant General Counsel, without HUD posting the position competitively. Gail Laster, General Counsel of HUD at the time, chose to advertise the position along with two other Assistant General Counsel positions, with an opening date of January 5, 2001. Although both Stover and Dole applied for the open position, due to insufficient time before the change in Administrations, HUD did not fill the positions competitively. Instead, Laster reassigned the three then-serving Deputy Assistant General Counsels to the open

positions of Assistant General Counsels. Dole was the Deputy Assistant in the Denver office and was assigned to the Assistant position. Stover maintains that HUD's failure to reassign Stover to the Assistant General Counsel position after Lindsey's retirement was also retaliation for her EEO complaints and her answers to the Dellera interrogatory.

Stover filed suit in federal district court, alleging that HUD had discriminated against her based on her race and religion, and retaliated against her for her EEO complaints and participation in the Dellera interrogatory, in violation of Title VII, 42 U.S.C. § 2000e-3(a), and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a. Stover did not pursue her age discrimination claim; nor did she pursue a claim relying on a pattern or practice of discrimination. The district court granted summary judgment to HUD on all remaining claims; Stover appeals to this court, arguing that the district court erred in its ruling on her religious discrimination, racial discrimination, and retaliation claims.

## II

This court reviews the district court's grant of summary judgment de novo, using the same standards applied by the district court. Byers v. City of Albuquerque, 150 F.3d. 1271, 1274 (10th Cir. 1998). The evidence and reasonable inferences drawn from the evidence are viewed in the light most

- 6 -

favorable to the nonmoving party. Id. Summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Mere allegations, however, are insufficient to survive a motion for summary judgment. Dep't of Commerce v. United States House of Representatives, 525 U.S. 316, 329 (1999). "[W]e may affirm the district court for any reason supported by the record." Amro v. The Boeing Co., 232 F.3d 790, 796 (10th Cir. 2000).

## A

Title VII forbids retaliation against an employee because she has "opposed" any practice made unlawful by Title VII, or because she has "participated . . . in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Where there is no direct evidence of retaliation, we analyze a retaliation claim under the McDonnell Douglas burden-shifting framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04 (1973); Jeffries v. State of Kansas, 147 F.3d 1220, 1231 (10th Cir. 1998) (applying the McDonnell Douglas framework to a claim of retaliation). Following this framework, an employee must first present a prima facie case of retaliation, which then shifts the burden to the employer to produce a legitimate,

nondiscriminatory justification for taking the disputed employment action. Jones v. Barnhart, 349 F.3d 1260, 1266 (10th Cir. 2003). If the employer provides a legitimate, non-discriminatory justification for the action, the burden shifts back to the employee to provide evidence showing that the employer's proffered reason is a pretext for discrimination. Id. An employee may demonstrate pretext by showing the employer's proffered reason was so inconsistent, implausible, incoherent, or contradictory that it is unworthy of belief. Bausman v. Interstate Brands Corp., 252 F.3d 1111, 1120 (10th Cir. 2001).

As to the McDonnell Douglas first prong, Stover must first demonstrate a prima facie case. To state a prima facie case of retaliation, Stover must demonstrate that: (1) she engaged in protected opposition to discrimination; (2) HUD took an adverse employment action against her; and (3) there exists a causal connection between the protected activity and the adverse action. Jones, 349 F.3d at 1269; Kendrick v. Penske Trans. Servs, Inc., 220 F.3d 1220, 1234 (10th Cir. 2000).

There is no dispute that Stover's EEO complaints are protected activity. Anderson v. Coors Brewing Co., 181 F.3d 1171, 1178 (10th Cir. 1999). We decide whether an employment action is considered adverse on a case-by-case basis. Gunnell v. Utah Valley State Coll., 152 F.3d 1253, 1264 (10th Cir. 1998). Although we will liberally construe the phrase adverse employment action, id.,

the action must amount to "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or . . . causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998); see also Annett v. Univ. of Kansas, 371 F.3d 1233, 1237–38 (10th Cir. 2004) (applying Ellerth). Mere inconveniences or alterations of job responsibilities do not rise to the level of an adverse employment action. Annett, 371 F.3d at 1239. Finally, a causal connection may be established by proffering "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1320 (10th Cir. 1999) (quotation omitted); Annett, 371 F.3d at 1239–40.

The district court analyzed Stover's claims of retaliation for her EEO complaints both as separate adverse employment actions and, taken in the aggregate, as constituting a hostile work environment. It found that separately, any claim of adverse action alleged by Stover could not be found to have resulted from retaliation. Even aggregating the allegedly adverse employment actions, Stover failed to demonstrate she was subjected to a work environment sufficiently abusive to constitute a hostile work environment. On appeal, Stover argues that the district court erred in analyzing her claims under the hostile work environment

standard, and that a retaliation standard is the only legal standard applicable to her claims. Accordingly, we will analyze her claims as retaliation claims.

Stover suggests that following her EEO complaints, she was: (1) given a lower performance evaluation than she had previously received; (2) denied an offer for the position of Supervisory Attorney-Advisor; (3) was not selected for a special assignment; (4) relocated to a different office away from other attorneys; and (5) generally "denied meaningful work commensurate with her grade and experience." (Appellant Br. at 44.) With respect to Stover's first claim of a lowered performance appraisal, as the district court noted, Stover testified, and the cover letter to her performance appraisal reflects, her "Highly Successful" evaluation was completed before Diaz left office on January 31, 1997. (I R. at 54, 85, 470.) Because Stover's first EEO Complaint was dated February 5, 1997, after her performance appraisal was completed, we agree with the district court that Stover's "Highly Successful" performance appraisal could not have been in retaliation for filing her EEO complaints.

As to Stover's contention that she was denied the position of Supervisory Attorney-Advisor in retaliation for her EEO complaints, we first note that Stover did not apply for this competitively advertised position. In order for a plaintiff to assert that her employer retaliated against her by failing to hire, rehire, or promote her, that employee must have applied for the position she was denied. Garcia v.

Pueblo Country Club, 299 F.3d 1233, 1238 (10th Cir. 2002); Bennet v. Quark, Inc., 258 F.3d 1220, 1228 (10th Cir. 2001) (establishing a failure to promote claim requires that the plaintiff have "at least sought" the position in question). Stover sidesteps this requirement by arguing that HUD retaliated against her— not by refusing to hire her—but by requiring her to apply competitively, rather than simply offering her the Supervisory Attorney-Advisor position. This was discriminatory, she contends, because she was the most qualified person for the position. She also asserts that applying for the position would have been futile, because "by advertising the position, Defendant made it clear that Ms. Stover was not going to be considered for it." (Appellant's Br. at 52 n.6.) Although Stover had received "Outstanding" reviews from HUD, absent more evidence, her subjective opinion that she was the most qualified person for the Supervisory Attorney-Advisor position and that therefore HUD's advertisement of the position amounted to retaliation against her, is insufficient to demonstrate an adverse employment action.[1]

Stover also asserts that HUD gave a special assignment to Ellen Dole, rather than herself, in retaliation for her EEO protected activities. In November

---

[1] Moreover, we also note that Stover has failed to establish that there was a causal connection between HUD's advertisement of the position and her February 1997 and June 1997 EEO complaints, filed over two years prior to this alleged retaliatory action.

- 11 -

1999, Ellen Dole was given a special assignment in the Denver HUD office; she was to review Field Office determinations to ensure national consistency in implementing a particular HUD program. Stover maintains that she was more qualified than Dole for the special assignment, and that HUD denied her the assignment in retaliation for her previous EEO complaints. However, we decline to consider this "nonassignment" as adverse absent evidence that the action amounted to a significant change in her employment status. Ellerth, 524 U.S. at 761; Annett, 371 F.3d at 1239 (defining adverse actions to include "acts that carry a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects") (quotation omitted). There is no indication in the record that this special assignment was a competitive position; in fact, the record reflects that Dole was asked by the chair of the team assigned to complete this project to assist them by providing legal advice. Nor does Stover demonstrate that the chair of the team who selected Dole was aware of Stover's EEO complaints. Petersen v. Utah Dept. of Corrections, 301 F.3d 1182, 1188–89 (10th Cir. 2002) (citing Williams v. Rice, 983 F.2d 177, 181 (10th Cir. 1993) (holding that a plaintiff must demonstrate that the individual alleged to have taken an adverse action against her knew of the plaintiff's Title VII protected activity in order to establish a prima facie case of retaliation)). Even if we were to assume that HUD's selection of Dole for the special assignment constitutes an adverse

action against Stover, her subjective belief that she was more qualified than Dole for the special assignment is insufficient, standing alone, to preclude a grant of summary judgment to HUD regarding this claim. See, e.g., Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988) (concluding that a plaintiff's claim she was as or more qualified than the employee retained for a position was insufficient to avoid a grant of summary judgment to her employer on plaintiff's discrimination claim; "[i]t is the perception of the decision maker which is relevant, not plaintiff's perception of herself").

In addition, Stover claims that HUD's failure to reassign her to the Assistant General Counsel position following Diane Lindsey's retirement was an act of retaliation. Lindsey had replaced Stover in 1996 as Assistant General Counsel. When Lindsey retired in 2000, Stover requested she be reassigned to this position, rather than applying for it competitively. Gail Laster, HUD's General Counsel at the time, competitively advertised the position along with two other Assistant General Counsel positions—one in Atlanta, Georgia and one in Philadelphia, Pennsylvania—which were open. Although the positions were advertised, and both Stover and Dole applied for the Denver position, due to time constraints, they were not filled competitively before the change in presidential administrations. Rather, and in order to fill the positions permanently before the next administration took office, Laster reassigned the Deputy Assistant General

Counsels of Atlanta, Denver, and Philadelphia, to the respective open Assistant General Counsel positions in those cities. Dole was therefore assigned the Denver Assistant General Counsel position.

Stover filed an EEO complaint in March of 2000 and Dole, rather than Stover, was named Acting Assistant General Counsel in June 2000; accordingly, we will assume without deciding that Stover has demonstrated an adverse employment action occurring close enough in time to her protected activity to infer a retaliatory motive. Thus, as to this claim, we proceed to analyze the second and third steps of the <u>McDonnell Douglas</u> framework: namely whether HUD produced a legitimate, nondiscriminatory justification for taking the disputed employment action, and if so, did Stover provide evidence showing that the employer's proffered reason is a pretext for discrimination.

As to the second step of the <u>McDonnell Douglas</u> burden shifting analysis, HUD explained "its actions against [Stover] in terms that are not facially prohibited by Title VII," <u>see</u> <u>Jones</u>, 349 F.3d at 1266 (quotation omitted), i.e., that Dole was appointed Assistant General Counsel because she was Deputy Assistant Counsel, time was too short to name an Assistant General Counsel before the new administration, and the two other open Assistant General Counsel positions were filled in the same manner. Consequently, the burden shifts to Stover to demonstrate that HUD's proffered reason was pretextual. <u>Id.</u> A plaintiff may

demonstrate pretext by showing that an employer's proffered reason for the disputed employment action is so weak, implausible, contradictory, inconsistent, or incoherent as to be unworthy of belief. Id. It is implausible to conclude that HUD's uniform procedure in three different cities for the three Assistant General Counsel positions constitutes pretext for HUD's retaliatory motive in denying Stover a position in Denver. Accordingly, we conclude that Stover has failed to demonstrate a genuine dispute of material fact regarding whether HUD's asserted reason for Stover's nonassignment to the Assistant General Counsel position in 2001 was pretextual.

More generally, Stover argues that she was isolated from other HUD attorneys in her office and that she was denied meaningful work, all in retaliation for her Title VII protected activities. Although we have recognized that an increased workload might constitute an adverse employment action, Jones, 349 F.3d at 1269–70, and a significant change in employment responsibilities may rise to the level of an adverse employment action, see Ellerth, 524 U.S. at 761, we cannot conclude that Stover has proffered evidence to support an inference that these circumstances amount to retaliation for her EEO complaints. In fact, Stover's claim she was denied meaningful work is undercut by her reported success on the "El Dorita" case, for which she received a Certificate of Superior Accomplishment. Moreover, even if we were to assume that these circumstances

amounted to an adverse employment actions, Stover has failed to demonstrate that these actions were connected to and caused by her EEO complaints.

In addition to her EEO complaints, Stover asserts that her response to the interrogatory request for Dellera's suit against HUD also constitutes protected activity. However, the lapse of over two years between her participation in the Dellera suit and the alleged adverse actions of which she complains is too attenuated to support an inference of causation. See Annett, 371 F.3d at 1240–41 (concluding that a period of two to three months between the protected activity and the alleged retaliatory action was close enough to establish a prima facie case of causation); Anderson, 181 F.3d at 1179 (assuming that temporal proximity of two months and one week is sufficient to support a prima facie case of retaliation); Ramirez v. Oklahoma Dep't. of Mental Health, 41 F.3d 584, 596 (10th Cir. 1994) (concluding that a one and one-half month period between protected activity and adverse action may establish causation); compare, Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1395 (10th Cir. 1997) (suggesting that a four-month period between a plaintiff's participation in a protected activity and the alleged retaliatory action without more would be insufficient to support an inference of causation); Burrus v. United Telephone Co. of Kansas, 683 F.2d 339, 343 (10th Cir. 1982) (concluding that a span of three years without other evidence of retaliatory motive is inadequate to sustain an inference of causation).

Moreover, she fails to provide sufficient direct or indirect evidence to support such a connection.[2] Therefore, we need not reach the question of whether her response to the Dellera interrogatory constitutes an additional protected activity.[3]

Finally, Stover suggests that taken together, all of these actions allegedly taken in response to her EEO complaints and her participation in the Dellera matter amounted to an adverse employment action. The sheer quantity of HUD's retaliatory acts toward her, argues Stover, demonstrates that she was subject to pervasive retaliation by HUD. See Gunnell, 152 F.3d at 1264. In Gunnell, we held that "co-worker hostility or retaliatory harassment, if sufficiently severe, may

---

[2] Stover argues that she proffered evidence that Diaz retaliated against others who had responded to the Dellera interrogatories, as indirect evidence of "Diaz' retaliatory intent." (Appellant Br. at 51.) There were reportedly eighty lawyers in attendance at the Diaz meeting, which was the subject of the Dellera interrogatories, and most responded to the interrogatory request. That two HUD attorneys reassigned and one subjected to "attempted reassignment" does not, contrary to Stover's assertions, support an inference that Diaz harbored a retaliatory intent against the attorneys who responded to the Dellera interrogatory request. The only pieces of evidence in the record that these reassignments were in any way related to the Dellera interrogatory responses are Stover's opinion and the opinion of one of the other reassigned HUD attorneys. We have previously held that an individual's subjective belief that she had been discriminated against is insufficient to preclude a grant of summary judgment. Aramburu v. The Boeing, Co., 112 F.3d 1398, 1408 n.7 (10th Cir. 1997) (gathering cases). We simply cannot conclude based on these facts that a reasonable jury could infer Diaz retaliated against Stover for her Dellera interrogatory response.

[3] On appeal, HUD assumes for the purposes of this litigation that Stover's participation in the Dellera suit constitutes protected activity.

constitute adverse employment action for purposes of a retaliation claim." 152 F.3d at 1264 (quotation omitted).

First, we note that Stover's claims of retaliation are not centered on her co-workers at HUD; rather, she complains of retaliation from her supervisors and management. Second, even aggregating her claims—she was moved to an isolated office, she did not receive work commensurate with her experience, she was not offered a Deputy Assistant General Counsel position, she once received a "Highly Successful," as opposed to an "Outstanding" performance appraisal, and she did not receive the level of recognition she believed she deserved for her work on the "El Dorita" case—we cannot conclude that these actions constitute harassment severe enough to constitute an adverse action for the purposes of a retaliation prima facie case. Mere inconveniences or alterations of job responsibilities do not constitute adverse employment actions. Annett, 371 F.3d at 1239. Additionally, we have previously recognized that simply because an employee receives an evaluation lower than previous evaluations, the lower evaluation cannot be assumed to be a negative evaluation for the purposes of a retaliation claim. Meredith v. Beech Aircraft Corp., 18 F.3d 890, 896 (10th Cir. 1994). There may be circumstances where inconveniences, alterations of job responsibilities, lower performance reviews, and insufficient recognition for outstanding work considered individually are insufficient to demonstrate an

adverse employment action, yet when considered together, amount to an adverse employment action. We are not, however, faced with those circumstances here. Consequently, we conclude that the district court properly granted summary judgment to HUD on Stover's retaliation claims.

**B**

Turning to her racial discrimination claim, Stover argues that HUD treated white employees less favorably than minority employees, replaced white attorneys with minorities, and promoted a disproportionate number of minority attorneys to management. "Title VII protects members of both majority and minority groups from race-based discrimination." Taken v. Oklahoma Corp. Comm'n, 125 F.3d 1366, 1368 (10th Cir. 1997). Actions brought under Title VII alleging racial discrimination may be supported with direct evidence, e.g., a defendant's oral statements demonstrating her discriminatory motivation. See Kendrick, 220 F.3d at 1225. Alternatively, a plaintiff may support her Title VII claim of racial discrimination with indirect or circumstantial evidence. Id. When indirect or circumstantial evidence is the basis of a Title VII claim, we evaluate the evidence under the McDonnell Douglas framework. Id.; McDonnell Douglas, 411 U.S. at 802–04.

To establish a Title VII racial discrimination claim under McDonnell Douglas, a plaintiff must demonstrate:

(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

McDonnell Douglas, 411 U.S. at 802. In lieu of demonstrating that the reverse discrimination plaintiff belongs to a racial minority to satisfy the first condition of the McDonnell Douglas prima facie case, she may instead "identify background circumstances that . . . [show] that the defendant is one of those unusual employers who discriminate against the majority." Reynolds v. School Dist. No. 1, 69 F.3d 1523, 1534 (10th Cir. 1995). Alternatively, a reverse discrimination plaintiff may satisfy the first prong of McDonnell Douglas by presenting "indirect evidence sufficient to support a reasonable probability, that but for the plaintiff's status the challenged employment decision would have favored the plaintiff." Notari v. Denver Water Dept., 971 F.2d 585, 590 (10th Cir. 1992).

If an employee satisfies the four McDonnell Douglas conditions, she has presented a prima facie case of discrimination. The employer must then produce a legitimate, nondiscriminatory justification for the employment action, at which point the employee must provide evidence showing that the employer's justification is a pretext for discrimination.

Even were we to assume Stover's evidence is sufficient to establish a prima facie case of discrimination under McDonnell Douglas, Stover fails to

demonstrate that HUD's legitimate employment reasons for its actions are pretextual. The only alleged adverse actions Stover established were her reassignment from Assistant General Counsel to Managing Attorney in November 1996, which we determined was an adverse action, and her nonassignment to Assistant General Counsel in 2001, which we assumed for purposes of this decision was an adverse action. We are mindful that in evaluating pretext, the "relevant inquiry is not whether [HUD's] proffered reasons were wise, fair or correct, but whether [HUD] honestly believed those reasons and acted in good faith upon those beliefs." Bullington, 186 F.3d at 1318. Moreover, our role is not to second guess an employer's business judgment. Simms v. State of Oklahoma, 165 F.3d 1321, 1330 (10th Cir. 1999). As to her reassignment from Assistant General Counsel, HUD proffered several justifications: (1) Diaz believed that Stover's management style was inappropriate for the Denver office; (2) Diaz had received complaints about Stover's supervision of attorneys and support staff; (3) other HUD program managers had complained about the Denver office; and (4) Diaz himself believed that Stover lacked communication skills. Stover's evidence of four reassigned attorneys is insufficient to demonstrate that these proffered reasons were so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief. See Annett, 371 F.3d at 1241.

Regarding her nonassignment to the position of Assistant General Counsel in 2001, Gail Laster explained that for all three Assistant General Counsel positions open at the time, the Deputy Assistant General Counsel was promoted to Assistant General Counsel because the change of presidential administrations was imminently approaching, and Laster wanted to make permanent appointments before the administration changed. Moreover, Laster believed that all three Deputy Assistant General Counsels—who were performing as Acting Assistant General Counsels—were "performing their duties as Acting Assistant General Counsels in a superior manner." (I r. at 228.) Stover argues that Laster's explanation should not be believed because Stover had twelve years experience in the position, while Dole, who was given the position, had only six months experience as Acting Assistant General Counsel. Given that all three open Assistant General Counsel positions were filled in the same way—promoting the Deputy Assistant General Counsel who had been performing as Acting Assistant General Counsels—Stover's argument that she was more experienced than Dole is insufficient to establish that HUD's explanation was so inconsistent, implausible, incoherent, or contradictory to not be given credence. Bausman, 252 F.3d at 1120. See also Branson, 853 F.2d at 772 (concluding that a plaintiff's claim that she was as or more qualified than the employee retained for a position was insufficient to avoid a grant of summary judgment to her employer). We conclude

that Stover has not met her burden of demonstrating that HUD's proffered explanations for the two actions were pretextual; therefore her racial discrimination claims fail under the McDonnell Douglas test. Accordingly, we conclude that the grant of summary judgment to HUD on Stover's racial discrimination claims was proper.

## C

Title VII also prohibits an employer from discharging "any individual . . . because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). "[A]ll aspects of religious observance and practice, as well as belief" are protected. 42 U.S.C. § 2000e(j). The familiar McDonnell Douglas framework is equally applicable to religious discrimination claims, modified to reflect the particular factual situation at hand. See Shapolia v. Los Alamos Nat'l Lab., 992 F.2d 1033, 1037–38 (10th Cir. 1993) (modifying the traditional McDonnell Douglas prima facie case where plaintiff argued he was discriminated against because he failed to share the same religious beliefs as his employer). In the instant case, Stover argues that she has established a prima facie case by showing that: (1) she is Jewish; (2) she was subjected to an adverse employment action; and (3) there is a causal connection between her religion and the adverse employment action. HUD argues that Stover has not demonstrated that she is Jewish, and that in any event, she failed to demonstrate that anyone at HUD responsible for the alleged adverse

actions was aware that Stover was Jewish. We accept Stover's assertion that she is Jewish; however, we are unable to conclude that Stover has shown a causal connection between her being Jewish and these adverse employment actions, namely her reassignment to Managing Attorney and her nonassignment to Assistant General Counsel.

Stover claims that Diaz made at least two remarks which exhibited his bias against Jews. Neither of these remarks were directed at or about Stover. Isolated remarks, unrelated to the disputed employment action, are insufficient to demonstrate discriminatory animus. Rea v. Martin Marietta Corp., 29 F.3d 1450, 1457 (10th Cir. 1994); Cone v. Longmont United Hospital Assoc., 14 F.3d 526, 531 (10th Cir. 1994). Rather, a plaintiff must demonstrate that there is a nexus between the alleged discriminatory comments, and the disputed employment decision. Rea, 29 F.3d at 1457. This nexus can be established through evidence showing that the discriminatory comments were directed at the plaintiff, her position, or the employer's policy which led to the disputed employment decision. Id. Here, the alleged discriminatory comments were not directed toward Stover or her position. Although Stover nonetheless argues that the comments exhibit a pattern or practice by Diaz of taking religion into account when making employment decisions, there is simply nothing in the record before us that ties

these isolated remarks to any employment decisions made by Diaz, let alone the decision to reassign Stover.

The alleged discriminatory comments were made two years prior to the adverse employment decision. This length of time precludes an inference of causation without additional evidence linking the comments to the adverse actions suffered by Stover. See Annett, 371 F.3d at 1240–41; Anderson, 181 F.3d at 1179 (concluding in the context of retaliation that close temporal proximity may establish an inference of causation between the adverse employment action and the protected activity). Stover has not demonstrated a nexus between the comments and either adverse employment action. We agree with the district court that "there is no support for a finding that HUD personnel took any action against her based on a discriminatory attitude" toward Jews. (Dist. Ct. Order at 9.) As a result, we conclude that summary judgment to HUD is proper on Stover's religious discrimination claims.

## III

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.