**F I L E D**

**UNITED STATES COURT OF APPEALS**

**February 6, 2007**

**FOR THE TENTH CIRCUIT**

ROBERT BUNDY,

      Plaintiff-Appellant,

v.

CHAVES COUNTY BOARD OF
COMMISSIONERS,

      Defendant-Appellee.

No. 06-2154
(D.C. No. CIV-05-122 MCA-RLP)
(D. N.M.)

---

**ORDER AND JUDGMENT***

---

Before **HOLMES**, **McKAY**, and **BRORBY**, Circuit Judges.

---

Plaintiff-Appellant Robert Bundy appeals from the summary judgment in

his disability-discrimination case. We have jurisdiction under 28 U.S.C. § 1291,

and we affirm.

---

\*     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

Mr. Bundy worked as a guard at the Chaves County Detention Center in Roswell, New Mexico. On October 9, 2003, he was injured in a car accident and had to have his left arm amputated above the elbow. The next day, the County's human-resource specialist, Sheila Nunez, mailed a letter to Mr. Bundy's home, stating that he was being placed on leave under the Family and Medical Leave Act (FMLA), and that he needed to have his physician fill out the enclosed FMLA certification form. Mr. Bundy's physician, Dr. Fred Hensal, completed the form on October 28 and returned it, indicating that Mr. Bundy was unable to perform any kind of work and that it was necessary for Mr. Bundy to be absent from work.[1] The final paragraph of Nunez's letter directed Mr. Bundy to "present a 'release to return to work' certificate from [his] health care provider . . . before [he could] resume work." Aplt. App. at 51.

In late October 2003, after being released from the hospital, Mr. Bundy met with Nunez and discussed "the paperwork and how the disability worked and [he] brought to her attention that [he] was interested in a dispatch job" with the Sheriff. *Id.* at 58. But "[he] never said anything about not wanting to go back to the jail." *Id.* Instead, he asked Nunez to "send [him] advertisements . . . for any

---

[1] Dr. Hensal later indicated during his deposition that the probable duration of Mr. Bundy's "incapacity" was three to six months, Aplt. App. at 153, but that "he could [have] return[ed] to some form of lighter, limited duty if it were available," at the end of November 2003, *id.* at 81.

job openings within the county that [he] was qualified for." *Id.* Afterward, Mr. Bundy visited the Detention Center, where he told several of his co-workers that "[he] had no idea" "when [he] was coming back to work," and "that [it] was up to [Dr. Hensal]." *Id.* at 59.

Mr. Bundy met with Dr. Hensal for treatment on October 28, 2003, November 13, 2003, and January 21, 2004. Dr. Hensal told Mr. Bundy that he "had some concerns about a one-armed prison guard" and "about his ability to return to that kind of work." *Id.* at 76. But Dr. Hensal also told Mr. Bundy that "if the prison would allow him to go to work under those circumstances, [he] wouldn't stand in his way." *Id.* at 77. Dr. Hensal testified during his deposition that he could not recall Mr. Bundy ever requesting a release to return to work or a statement of physical limitations that could be provided to the County. Additionally, Dr. Hensal could not recall Mr. Bundy ever indicating an interest in working as a dispatcher.

On January 12, 2004, Nunez notified Mr. Bundy that he was about to exhaust his FMLA leave and that he needed to submit "a prognosis for return to work from [his] physician . . . so that we may evaluate this situation further." *Id.* at 83. Mr. Bundy responded, telling Nunez about an upcoming doctor appointment on January 21 and that "when [he] got back from [his] doctor . . . [he] would let her know what [he] needed." *Id.* at 61. But Mr. Bundy did not provide Nunez with the information. Indeed, he later testified that he did

not ask Dr. Hensal for a return-to-work release because he believed that Dr. Hensal would not release him to work in the Detention Center. *Id.* at 136.

On January 23, the County Manager, Stanton Riggs, notified Mr. Bundy that a pre-termination hearing had been scheduled for January 28 because he had exhausted his FMLA leave and had provided neither "a medical release . . . allowing [him] to return to work" at the Detention Center nor "a time table as to when [he would] be able to return to regular duty." *Id.* at 84. Riggs also informed Mr. Bundy that at the hearing, he would "be allowed to present any documentation from [his] doctor regarding [his] return to work." *Id.*

At the pre-termination hearing, Mr. Bundy offered nothing from his doctor, and instead reiterated his interest in a dispatcher position. Riggs responded that only the Sheriff could hire a dispatcher, and that "no matter what, you have got to have a return-to-work release from your doctor." *Id.* at 86 (quotation omitted). Riggs terminated Bundy on February 2, 2004, citing his exhaustion of leave and his lack of a release to return to work.

In February 2005, after receiving from the Equal Employment Opportunity Commission a determination that he was denied a reasonable accommodation, Mr. Bundy sued the County Board of Commissioners in federal court. The complaint sought relief under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101-12213, the New Mexico Human Rights Act, N.M. Stat. § 28-1-7, and New Mexico tort and contract law. The district court granted the

Board summary judgment. Regarding the ADA claim, the district court ruled that accommodating Mr. Bundy's disability by making him a dispatcher amounted to an unreasonable accommodation:

> Combined with [Mr. Bundy's] failure to provide medical documentation or a timetable for returning to work, his request to be reassigned to a [dispatcher] position under the hiring authority of the County Sheriff placed [the Board] in an untenable dilemma rather than offering an avenue for reasonable accommodation. On the one hand, [the Board] could not send [Mr. Bundy] back to his job as an Adult Detention Officer because [he] . . . never provided the medical documentation necessary to determine whether he could perform that job (or whether it was possible to restructure that job so as to accommodate [Mr. Bundy's] disability). On the other hand, [the Board] could not reassign [Mr. Bundy] to the position of dispatcher because, even assuming [he] would be qualified to perform that job (with or without reasonable accommodation), [the Board] could not override the statutory hiring authority of the County Sheriff . . . .[2]

Aplt. App. at 235. As for Mr. Bundy's state-law claims, the district court simply declined to exercise supplemental jurisdiction given the loss of the ADA claim to summary judgment.

On appeal, Mr. Bundy argues that (1) the requirement that he provide a return-to-work release was unrealistic, unnecessary, and in bad faith; (2) his requests for accommodation were ignored; (3) there was no evidence that his absence from work was indefinite; (4) he "was undisputably qualified for the

---

2       While a board of county commissioners may set the salaries of the employees and deputies necessary to discharge the functions of the county, only elected county officials, including sheriffs, have the authority to hire persons necessary to carry out the officials' duties. *See* N.M. Stat. § 4-38-19(A); N.M. Const. art. X, §§ 2(A) & (B).

dispatcher position, and . . . positions were available," Aplt. Br. at 28; and (5) he could have been transferred into a dispatcher position because it would not have infringed on the Sheriff's crime-fighting duties.

### DISCUSSION

### I. Summary Judgment Standards

We review the district court's summary judgment de novo. *Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, we view the evidence and draw all reasonable inferences in the light most favorable to the party opposing summary judgment. *See Stover*, 382 F.3d at 1070.

### II. Disability Discrimination

The ADA requires an employer "to provide reasonable accommodations to the known physical or mental limitations of an otherwise qualified" employee with a disability. *Bristol v. Bd. of County Comm'rs*, 312 F.3d 1213, 1217 (10th Cir. 2002) (quotation omitted). To survive summary judgment in a failure-to-accommodate case involving a request for reassignment, the employee must first establish a prima facie case by showing that (1) he "is a disabled person within the meaning of the ADA and has made any resulting limitations from

his . . . disability known to the employer"; (2) "[t]he preferred option of accommodation within the employee's existing job cannot reasonably be accomplished"; (3) he "requested the employer reasonably to accommodate his . . . disability by reassignment to a vacant position"; (4) he was qualified, with or without reasonable accommodation, to perform the essential functions of the desired job; and (5) the employer did not offer reassignment. *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1179 (10th Cir. 1999). If the employee meets this burden, the employer must then "present evidence either (1) conclusively rebutting one or more elements of [the] prima facie case or (2) establishing an affirmative defense." *Id.* Finally, "if the employer does either of the above, summary judgment will be appropriate for the employer unless the employee then presents evidence establishing a genuine dispute regarding the affirmative defenses and/or rehabilitating any challenged elements of [the] prima facie case." *Id.*

We conclude that Mr. Bundy, by failing to respond to the repeated requests for documentation concerning his ability to return to work, never triggered the Board's duty to consider reassignment. Reassignment is an option to be considered only after other efforts at accommodation within the employee's existing job have failed. *Id.* at 1170-71; *see also Davoll v. Webb*, 194 F.3d 1116, 1132 n.8 (10th Cir. 1999) ("In general, an employee requiring a reasonable accommodation will need to initiate the interactive process by notifying the

-7-

employer of his disability and resulting limitations, and requesting reassignment if no reasonable accommodation is possible in the employee's exiting job."). Moreover, Mr. Bundy's requested accommodation of reassignment to a dispatcher position was not reasonable, given that it was not within the Board's authority.

Accordingly, we AFFIRM for substantially the same reasons given by the district court in granting the Board summary judgment.[3]

Entered for the Court

Monroe G. McKay
Circuit Judge

---

[3] To the extent that the district court found that Nunez's and Riggs' requests for work releases concerned Mr. Bundy's ability to resume work in any capacity, rather than just his ability to return to the Detention Center, we conclude that the district court misconstrued the evidence. The totality of the evidence is not definitive one way or the other. Nevertheless, there is no dispute that Mr. Bundy failed to provide any information about when he could resume any sort of work or what the limitations from his disability were. Without such information, the Board could not determine whether a reasonable accommodation could be made at the Detention Center.