**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 6, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

AARON L. SAMPSON,

        Plaintiff-Appellant,

v.

INTEGRA TELECOM HOLDINGS,
INC., d/b/a Integra Telecom;
INTEGRA TELECOM OF UTAH,
INC.,

        Defendants-Appellees.

No. 10-4227
(D.C. No. 2:09-CV-00120-CW)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, **SEYMOUR**, and **GORSUCH**, Circuit Judges.

Mr. Aaron Sampson, an African American, brought suit against his former

employer, Integra Telecom Holdings, Inc., and Integra Telecom of Utah, Inc.

(collectively, "Integra"), alleging that he was terminated because of his race and

in retaliation for his complaints about racial harassment in violation of Title VII

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981.  The district court granted summary judgment to Integra on all claims.  Mr. Sampson appeals with respect to his retaliatory termination claims, and we affirm.[1]

Mr. Sampson was a sales representative at Eschelon Telecom, Inc., where his job required him to sell Access Line Equivalents ("ALEs") to new customers.  During his employment, Mr. Sampson was subjected to racially derogatory comments and jokes by his co-workers and supervisors.  Mr. Sampson complained about these incidents, but he was never satisfied with the way Eschelon addressed his complaints.  Mr. Sampson also never met his sales quota at Eschelon.  In July 2007, he was placed on a performance improvement plan ("PIP") that required him to reach a three-month average of 70% of his three-month quota.  He failed to reach that target.

Integra acquired Eschelon on August 31, 2007.  Mr. Sampson, along with two other Eschelon sales representatives, were hired by Integra.  In light of Mr. Sampson's PIP at Eschelon, Integra placed him on a PIP as a condition of his hiring.  While he was at Integra, Mr. Sampson continued to complain about his treatment at Eschelon and his belief that the racially motivated conduct had not

---

[1] "[T]he showing required to establish retaliation is identical under § 1981 and Title VII . . . ."  *Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1110 (10th Cir. 1998).  Therefore we consider both claims under the same analysis.

been adequately addressed. He also reported that he was being mistreated by co-workers at Integra.

On November 30, 2007, Mr. Sampson met with Chris Arambula, Integra's Vice President of Sales, who was one of Mr. Sampson's supervisors. Mr. Sampson again expressed his concerns about the handling of his complaints at Eschelon and his belief that he was being mistreated by co-workers at Integra. Mr. Sampson testified that Mr. Arambula responded by saying, "I'm disappointed to hear that. I will look into your concerns and make sure they will be handled appropriately. Your complaints are not going to be tolerated." Aplt. App., vol. II at 311. Mr. Arambula then discussed Mr. Sampson's lackluster sales performance and told him that his sales were not where they needed to be. The following week, Mr. Sampson was placed on a Final Performance Improvement Plan ("Final PIP"). He was terminated at the end of December 2007 after he failed to meet the Final PIP's requirements. Mr. Sampson contends he was terminated in retaliation for having voiced complaints about racial harassment at Integra and Eschelon.

We review the grant of summary judgment de novo, applying the same legal standards as the district court. *Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004). We view the evidence in the light most favorable to the nonmoving party. *Id.* Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Because Mr. Sampson offers no direct evidence of retaliation, we evaluate his claim under the three-part framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this approach, a plaintiff must first establish a prima facie case of retaliation by showing: "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006). If the plaintiff establishes a prima facie case, the employer must offer a legitimate, nonretaliatory reason for its decision. *Id.* If this is done, the burden then shifts back to the plaintiff to demonstrate that the employer's reason is merely a pretext for retaliation. *Id.* at 1203.

Even assuming without deciding that Mr. Sampson established a prima facie case of retaliation, his claim still fails. Integra offered a legitimate, nonretaliatory reason for Mr. Sampson's discharge: poor performance. *See Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1125 (10th Cir. 2005) ("Poor performance is a quintessentially legitimate and nondiscriminatory reason for termination."). Mr. Sampson never met his quota at Eschelon or Integra, and he was Integra's worst-performing salesperson in both September and November.

Mr. Sampson offers no evidence from which a reasonable jury could believe that Integra's proffered reason for his discharge was pretextual. A

-4-

plaintiff may demonstrate pretext in a variety of ways, including by showing that his employer's proffered reason for the adverse employment action is false, the employer acted contrary to written or unwritten policy or practice, or the employer treated plaintiff differently from "similarly-situated employees who violated work rules of comparable seriousness." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000). The plaintiff bears the burden of showing that he and other employees were similarly situated. *Kelley v. Goodyear Tire & Rubber Co.*, 220 F.3d 1174, 1178 (10th Cir. 2000).

Generally, to be similarly situated, employees must "deal with the same supervisor and [be] subject to the same standards governing performance evaluation and discipline."[2] *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) (internal quotation mark omitted). We consider an employee's supervisor when evaluating whether others are similarly situated because "[d]ifferent supervisors will inevitably react differently" to employee misconduct. *Kendrick*, 220 F.3d at 1233. Although Dwayne Lazarre was Mr. Sampson's immediate supervisor at the time he was placed on the Final PIP, Mr. Arambula, the Vice President of Sales, enacted the Final PIP and delivered it to Mr. Sampson. Mr. Arambula also participated in the decision to terminate Mr.

---

[2] The same supervisor test applies in this case because Mr. Sampson provides no support for his claim that Integra engaged in a company-wide policy of retaliation. *See Piercy v. Maketa*, 480 F.3d 1192, 1202 (10th Cir. 2007).

Sampson.[3]  Because of Mr. Arambula's role in disciplining Mr. Sampson, we consider all sales representatives overseen by Mr. Arambula to determine whether any were similarly situated to Mr. Sampson.

In an effort to show pretext, Mr. Sampson claims that other similarly situated sales representatives were not required to meet Integra's sales quota of 70 ALEs, no employees were terminated during his time at Integra for failing to meet their quotas, and he was the only sales representative subjected to a PIP with a mid-month quota.

The record belies Mr. Sampson's claim that other sales representatives at Integra were similarly situated to him.  His closest comparators are MW and SM, who were also retained from Eschelon during the merger.  But unlike Mr. Samson, MW and SM had better sales performances at Eschelon and were not on any form of PIP when they began their tenure at Integra.[4]  As a result, Mr.

---

[3] Mr. Sampson claims there are conflicting accounts of who made the decision to terminate him.  But Mr. Sampson distorts the record in an effort to establish pretext.  The record shows that Mr. Arambula made the decision to place Mr. Sampson on the Final PIP, that he discussed this decision with a human resources representative who prepared the document, and that Mr. Lazarre agreed the Final PIP was appropriate.  *See* Aplt. App., vol. II at 374, 383, 367; Supp. App. at 2, 5.  The record also shows that Mr. Arambula and Mr. Lazarre both participated in the decision to terminate Mr. Sampson.  *See* Aplt. App., vol. II at 374-75; Supp. App. at 2.

[4] Mr. Sampson attempts to create an appearance of impropriety regarding his first Integra PIP by noting that it was not in writing.  But Mr. Sampson testified during his deposition that he was told when he was hired that he was being put on such a plan.  It is undisputed that Integra hired him only on the condition that he be on a PIP.  Moreover, whether Mr. Sampson's *termination* was

-6-

Sampson was not "subject to the same standards governing performance evaluation," *McGowan*, 472 F.3d at 745, at Integra as MW and SM. Similarly, the other sales representatives at Integra joined the company before its merger with Eschelon and therefore had longer sales histories than Mr. Sampson. Mr. Sampson has not shown that any other Integra employee was on a PIP at the time of hiring or during the months he was employed at Integra.

Even if all of the sales representatives at Integra were similarly situated, however, Mr. Sampson has not shown he was subject to disparate treatment. All employees with sales results similar to or worse than Mr. Sampson either quit or were themselves fired within six months of Mr. Sampson's termination. Further, Integra has shown there were various other sales representative who were placed on PIPs – including two PIPs with mid-month sales quotas – and terminated within a few months of Mr. Sampson.[5] Even MW, who had stronger sales records than Mr. Sampson at both Eschelon and Integra, was placed on a PIP in May 2008

---

retaliatory is unrelated to any alleged irregularities regarding the first PIP he was placed on when he was *hired* by Integra.

[5] Mr. Sampson claims that Integra's documentation of other employees' PIPs and terminations have irregularities that render them untrustworthy. The district court refused to interpret these irregularities as evidence of pretext, as do we. We agree with the district court that "Integra has offered proof that these inconsistencies are not attempts to mislead the court or fabricate evidence . . . . In response to this proof, Mr. Sampson has presented no evidence to the contrary, instead arguing only that the court should assume that something improper has occurred." *Sampson v. Integra Telecom Holdings, Inc.*, No. 2:09-cv-120 CW, 2010 WL 5069851, at *10 (D. Utah Dec. 6, 2010).

due to his sales performance and was terminated in June 2008 after he failed to meet his quota. While some Integra employees had lower sales numbers than Mr. Sampson during the five months of his employment, Integra's failure to terminate these employees at the exact time they terminated Mr. Sampson is insufficient for a reasonable jury to conclude Integra's reason for terminating Mr. Sampson was pretextual.

Undisputed facts in the record also undermine Mr. Sampson's claim that the manner in which Integra enforced its employees' sales quotas shows pretext. As the district court noted, "Integra has shown that it did not strictly impose this quota on anyone, including Mr. Sampson." *Sampson v. Integra Telecom Holdings, Inc.*, No. 2:09-cv-120 CW, 2010 WL 5069851, at *9 (D. Utah Dec. 6, 2010). Only two sales representatives met their quotas during Mr. Sampson's tenure at Integra. And although Mr. Sampson was placed on a PIP upon being hired by Integra, he was not fired after selling zero ALEs in September, 42 ALEs in October, or six ALEs in November. It is true that Mr. Sampson sold more ALEs than any other sales representative during December 2007, but by this point he had been placed on the Final PIP and failed to meed the end-of-month quota it required. A reasonable jury could not find pretext in the way Integra enforced its sales representatives' quotas.

Finally, Mr. Sampson points to Mr. Arambula's statement, "Your complaints are not going be tolerated," Aplt. App., vol. II at 311, as evidence of

pretext. He claims this statement indicates Mr. Sampson's complaints about the allegedly hostile work environment were the reason for placing him on the Final PIP and ultimately terminating him. We disagree. When read in context, Mr. Arambula's statement can only reasonably be understood to mean that the *subject matter* of Mr. Sampson's complaints would not be tolerated. Indeed, after this conversation, Integra's human resources department conducted a new investigation into Mr. Sampson's concerns. No reasonable jury could conclude that Mr. Arambula's statement is evidence of pretext.

We **AFFIRM** the district court's grant of summary judgment to Integra.

ENTERED FOR THE COURT

Stephanie K. Seymour
Circuit Judge