FILED
United States Court of Appeals
Tenth Circuit

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

July 20, 2022

Christopher M. Wolpert
Clerk of Court

_____

BRUCE CASIAS,

    Plaintiff - Appellee,

v.

RAYTHEON COMPANY; RAYTHEON
INFORMATION SYSTEMS COMPANY,
and/or its business division: Intelligence,
Information, and Services,

    Defendants - Appellants.

Nos. 21-1195 and 21-1205
(D.C. No. 1:17-CV-02635-REB-SKC)
(D. Colo.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **TYMKOVICH**, Chief Judge, **EID**, and **CARSON**, Circuit Judges.
_____

Bruce Casias was an engineer working for defense contractor Raytheon. After 34 years without issue in the industry, Casias was instructed to falsify test results on a GPS program that would be used by the United States military. He reported those instructions and was demoted. At trial, a jury found Raytheon had violated the Defense Contractor Whistleblower Protection Act, and it awarded Casias damages of $1,043,000. We affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    BACKGROUND

Bruce Casias oversaw independent testing of a Raytheon GPS project designed for the U.S. Air Force.  The project was going poorly—it was far behind schedule and more than a billion dollars over budget.  In November of 2015, Casias's superior Joe Hollon instructed Casias to change certain data to make the project look more successful.  Specifically, Hollon asked Casias to mark all incomplete tasks as complete.

In a phone call, Casias questioned the ethics of changing the data, but Hollon insisted, saying "Just do it."  So Casias changed the data and sent it to the Air Force, as instructed.  He immediately notified Raytheon leadership that Hollon had instructed him to falsify data.  Over the next months, Casias received emails from the Air Force asking why the data was suddenly different.  He responded only to defer the questions to Hollon.  During this period, he repeatedly brought up his ethics concerns to Hollon and was chastised for doing so.

In May of 2016, Casias was reassigned from his testing role where he managed dozens of employees to a minor role managing only two employees.  Hollon told Casias's replacement, David Martinez, that Casias had falsified data and was being removed from his position.  Aplt. App., Vol. V at 1029.  Casias felt that he was being punished for telling the truth about the data.  He contacted Raytheon's Ethics Department and a Department of Defense hotline to report this.

Casias left Raytheon and took a position with Ball Aerospace. His salary, benefits, and rank at Ball were lower. He also experienced depression, health issues, weight changes, and relationship problems that led to divorce.

Casias sued Raytheon in the District of Colorado for employment violations, including a violation of the Defense Contractor Whistleblower Protection Act (DCWPA). The jury found for Casias on the DCWPA claim, awarding him $43,000 backpay and $1,000,000 noneconomic damages. The district court struck the backpay award, finding the demotion did not cause any lost wages.[1] The one million dollars in noneconomic damages still stands.

After trial, Raytheon filed a motion for judgment notwithstanding the verdict or remittitur. It argued (1) Casias did not show an adverse employment action or causation, necessary elements of his claim, (2) that the noneconomic damages awarded by the jury were excessive, and (3) that the weight of the evidence was against Casias. The district court denied Raytheon's motion, leaving the jury verdict undisturbed. It granted attorney's fees to Casias, as contemplated by the DCWPA. Raytheon appealed the judgment notwithstanding the verdict and attorney's fees orders.

---

[1] The adverse employment action here, the demotion, did not cause any change in Casias's salary or benefits. Casias's choice to resign and move to Ball Aerospace may have reduced his total compensation, but this was not a direct result of the adverse action by Raytheon. Thus, it is not properly considered in calculation of lost wages or backpay.

3

## II.    ANALYSIS

Raytheon advances two main arguments that the district court should have overturned all or part of the jury verdict: (1) there was not sufficient evidence for a jury to find for Casias as to each essential element of his DCWPA claim, and (2) the damages verdict was so excessive that it suggested prejudice.  For the reasons below, we reject both arguments, preserve the jury verdict, and affirm the decisions of the district court.

### A.  Sufficiency of the Evidence

Raytheon argues that the jury's verdict was not supported by the evidence.  But Casias presented enough evidence for a reasonable jury to find for him.[2]

Under the Rule 50(b) standard for judgment notwithstanding the verdict, "[w]e must affirm if, viewing the record in the light most favorable to [Casias], there is evidence upon which the jury could properly return a verdict for [Casias]." *Harold's Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1546 (10th Cir. 1996).  We may overturn the jury's verdict only if "there is no legally sufficient evidentiary basis . . . with respect to a claim or defense . . . under the controlling law." *Id.* (quoting Fed. R. Civ. P. 50(a)).

---

[2] The same is true for Raytheon's motion in the alternative for a new trial based on the weight of the evidence and its appeal of the attorney's fee award, as Raytheon's only argument against the award of attorney's fees is also based on the weight of the evidence.

The Defense Contractor Whistleblower Protection Act prohibits a defense contractor from demoting an employee "as a reprisal for disclosing . . . information that the employee reasonably believes is evidence of . . . mismanagement of a Department of Defense Contract."  10 U.S.C. § 4701(a)(1)(A).  To prevail on a DCWPA claim, an employee must prove (1) he engaged in protected activity, (2) the employer knew of the protected activity, and (3) the protected activity was a contributing factor in an adverse employment action taken against him.

Raytheon argues that Casias failed to prove two essential elements of his claim.  First, it argues Casias did not prove that he suffered an adverse employment action.  It claims he was reassigned, not demoted.  Second, Raytheon argues Casias did not prove that the adverse action was connected to his protected activity.  We find these arguments unpersuasive in light of the record as a whole.

***Demotion.***  Raytheon argues that Casias did not face an adverse employment action and was merely reassigned.  It is uncontested that his title, salary, and benefits stayed the same.  But he went from supervising dozens of employees to supervising only two.  Based on Tenth Circuit caselaw, a decrease in job responsibilities alone is relevant to, though not sufficient for, the existence of an adverse employment action. *See Stover v. Martinez*, 382 F.3d 1064, 1075 (10th Cir. 2004).  A change in responsibilities, combined with a decrease in reputation and job prospects, can constitute an adverse employment action.

Raytheon argues that Casias's job prospects remained the same, but a jury could reasonably infer otherwise.  Casias was hired by another defense contractor,

but he was hired at a lower rank and with a lower salary. Raytheon points out that its employees testified that it was not a demotion to be reassigned. But different Raytheon employees testified that the reassignment was a demotion, and they believed it would negatively impact Casias's career. A reasonable jury could view the conflicting testimony and decide the reassignment was adverse.

Raytheon also argues that after Casias resigned, the role he was reassigned to became more significant and had authority over more employees. There are differing ways to view this shift: either Casias's impatience caused him to resign before his role was fully settled, or Raytheon was punishing Casias but had no such qualms about his successor. The jury seemingly chose to believe the latter narrative. Taking the facts in the light most favorable to Casias, as we must, we cannot overturn that determination. There is evidence from which a reasonable jury could find that Casias experienced an adverse employment action.

*Causation.* As for causation, Raytheon first argues that Casias himself admitted he had no reason to believe Hollon retaliated against him. Op. Br. at 23. But that takes Casias's testimony out of context. The (confusing) question was, "You have no reason to believe Joe Hollon *would have a reason* to retaliate against you?" Op. Br. at 23 (emphasis added). This question goes to Hollon's motive, not the fact of whether or not he retaliated. Further, just before this answer, Casias started to say Hollon was forced into retaliation by higher-ups at Raytheon. A reasonable jury could infer from this testimony that Hollon retaliated against Casias, even though he did not have a personal reason for doing so.

Raytheon next argues that Hollon had an alternative reason to demote Casias—Casias followed his unethical order.  While this may be an undesirable reason to demote an employee, it is not prohibited by the DCWPA.  The DCWPA only prohibits demotion based on the *reporting* of an unethical act, not the *performance* of an unethical act.  It is true that Raytheon presented this theory to the jury, but the jury had sufficient reason to believe it was pretextual.  Casias testified that when he brought up the ethics of the false reporting, Hollon was angry and raised his voice.  When Casias mentioned his concerns in a meeting, Hollon chastised Casias for bringing up the false reporting around others.  Aplt. App., Vol. III at 843.  Finally, Hollon's claim that he demoted Casias for following Hollon's own order may well have rung false to the jury.  At this stage, it is not our role to weigh the evidence or consider alternative theories.  The jury had sufficient evidence to believe Casias's version of the events, and we cannot review its credibility decisions.

Raytheon finally argues that the district court incorrectly relied on the jury's rejection of Raytheon's defense.  The jury, when asked if Raytheon proved by clear and convincing evidence that it would have demoted Casias even absent the protected activity, said "No."  Raytheon argues it was error for the district court to rely on the rejection of its defense, because the defense and case-in-chief have different burdens of proof.  But the district court explicitly found "a legally sufficient evidentiary basis for each essential element of Mr. Casias's claim."  Aplt. App., Vol IV at 844.  Thus, the district court did not rely on the jury's rejection of Raytheon's affirmative

defense. Instead, it correctly found there was sufficient evidence for a reasonable jury to find Casias proved each element of his DCWPA claim.

### B. Damages

As for the damages award, to prevail on a motion for a new trial, a defendant must show the damages are so grossly excessive "as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial." *Telecor Communications, Inc. v. Southwestern Bell*, 305 F.3d 1124, 1143 (10th Cir. 2002). A jury has "wide latitude and discretion" in imposing a verdict for damages. *Prager v. Campbell Cty. Mem'l Hosp.*, 731 F.3d 1046, 1063 (10th Cir. 2013). It must weigh a large amount of conflicting evidence, and "[i]nherent in its decision [is] a searching assessment of each witness's credibility." *Id.* Thus, we give great deference to its determination of damages.

Raytheon argues that the damages were excessive because it did not do anything particularly egregious. But it falsified information for use by the United States military—this, if left unchecked and undiscovered, could have far-reaching repercussions. Then, when an employee attempted to report the falsification, it removed him from his data-collection role entirely. This is a serious violation of the DCWPA.

Raytheon next argues that the award was vastly disproportionate to Casias's injury. Casias alleges emotional and physical distress, a breakdown of his marriage and other relationships, and depression. He alleges that his successful career was derailed and his plans for retirement were put off. He suffered reputational harm

when Raytheon employees implied that he was responsible for the falsified data. Further, the fact that he was punished for reporting misconduct could reasonably cause emotional distress.

To be sure, the award here is large. But it was not a gross abuse of discretion for the trial court to find that the award did not represent "a miscarriage of justice." *Century 21 Real Est. Corp. v. Intern. Inv. Corp.*, 315 F.3d 1271, 1282 (10th Cir. 2003). It is possible that the jury found Raytheon's behavior to be egregious and that it credited Casias's testimony that he endured substantial emotional distress. Further, it may have found that Casias's reputation was particularly valuable, as he was a highly skilled, high-ranking engineer.

Giving proper deference to the jury's role, we affirm the district court's refusal to overturn its damages award.

### III.    CONCLUSION

For the reasons above, we affirm the decisions of the district court and the jury verdict. Casias is also entitled to seek appellate attorney's fees in the district court.

Entered for the Court

Timothy M. Tymkovich
Chief Judge